IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TONYA RENEE CRAFT,

    Plaintiff,

v.

SANDRA LAMB, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 4:10-CV-0068-HLM

## ORDER

This case is before the Court on the Motion to Dismiss filed by Defendant Sarah Henke [35], the Motion to Dismiss filed by Defendant Joal Henke [36], the Motion for More Definite Statement filed by Defendant The Greenhouse Children's Advocacy Center ("Greenhouse") [37], the Motion for More Definite Statement and Motion to Dismiss filed by Defendants Catoosa County, Georgia, Tim Deal, Phil Summers, and the Catoosa County Sheriff's Department

("CCSD") [38], the Motion to Dismiss filed by Defendant Sandra Lamb [40], the Motion to Dismiss filed by Defendants DeWayne and Sherri Wilson [42], the Motion for More Definite Statement Filed by the Children's Advocacy Center of the Lookout Mountain Judicial Circuit, Inc. ("CAC") [54], and the Motion to Dismiss, or, Alternatively, Motion for More Definite Statement [68] filed by Defendant Suzie Thorne.

## I.    Background

### A.    Plaintiff's Allegations

#### 1.    The Parties

Plaintiff resides in Soddy Daisy, Tennessee.  (Compl. ¶ 3.) Defendant Sandra Lamb resides in Ringgold, Georgia. (Id. ¶ 4.)   Defendant Sherri Wilson resides in Rossville,

2

Georgia.  (Id. ¶ 5.)  Defendant DeWayne Wilson resides in Rossville, Georgia.  (Id. ¶ 6.)  Defendant Joal Henke resides in Ooltewah, Tennessee, as does Defendant Sarah Henke.  (Id.  ¶¶ 7-8.)   Defendant Kelli McDonald resides in Chickamauga, Georgia.  (Id. ¶ 9.)

Defendant Tim Deal is an employee of Defendant CCSD.  (Compl. ¶ 10.)  Defendant Catoosa County is a municipal and governmental agency of the State of Georgia.  (Id. ¶ 11.)  Defendant CCSD is a division of Defendant Catoosa County.  (Id. ¶ 12.)  Defendant Phil Summers is an employee of Defendant CCSD.  (Id. ¶ 13.)

Defendant Thorne was an employee with Defendant Greenhouse or Defendant CAC, which are agencies that contracted with law enforcement authorities in Catoosa

3

County and that performed certain functions related to an action being investigated by Defendant Catoosa County. (Compl. ¶¶ 14, 17-18.)   Defendant Stacy Long was an employee of Defendant CAC.  (Id. ¶ 15.)  Defendant Laurie Evans was an employee of Defendant CAC.  (Id. ¶ 16.)

### 2.   Factual Allegations

Plaintiff has two minor children, A.H. and K.H.  (Compl. ¶ 20.)  Plaintiff alleges that, on May 19, 2008, Defendant Sandra Lamb reported in a telephone call to a Georgia Department of Children and Family Services worker that her minor daughter, R.L., had been involved in child-on-child sexual touching with A.H.  (Id. ¶ 21.)  A.H. is two years younger than R.L.  (Id.)  According to Plaintiff, "[d]espite repeated and suggestive questioning in which Plaintiff was

4

continually mentioned by Defendant Sandra Lamb by name," Plaintiff was not implicated.  (Id. ¶ 22.)

According to Plaintiff, on May 23, 2008, during a last day of school party at her home, Defendant Sherri Wilson noticed that K.W., a minor, used sidewalk chalk to write "sex and kissing xoxoxo."  (Compl. ¶ 23.)  Defendant Sherri Wilson called K.W.'s parents, who came to the home and had a discussion with Defendants Sherri and DeWayne Wilson.  (Id. ¶ 24.)  Plaintiff alleges that Defendant Sherri and DeWayne Wilson "made numerous false and derogatory comments about Plaintiff."  (Id. ¶ 25.)  K.W.'s parents left the Wilson residence and later questioned K.W. about the incident.  (Id. ¶ 26.)

AO 72A

Plaintiff alleges that, on the following day, Defendant Sandra Lamb began "repeatedly and suggestively questioning" her daughter, R.L., including asking questions that directly implicated Plaintiff.  (Compl. ¶ 27.)  After hours or days of such questioning, R.L. allegedly made a statement concerning inappropriate touching.  (Id. ¶ 28.)

Plaintiff alleges that Defendant Sandra Lamb, through Defendant CCSD, arranged an interview of R.L. with Defendant CAC.  (Compl. ¶ 29(a).)  Plaintiff asserts that Defendant DeWayne Wilson contacted Defendant CCSD and reported that Plaintiff had engaged in inappropriate touching of minor children.  (Id. ¶ 29(b).)

On May 27, 2008, Defendant Stacy Long interviewed R.L. at Defendant CAC.  (Compl. ¶ 30.)  According to

6

Plaintiff, "[u]nder repeated and suggestive questioning by Defendant Long," R.L. told Defendant Stacy Long about child-on-child touching with A.H. (Id. ¶ 31.) R.L. stated that Plaintiff kissed her on the head, neck, and shoulder, and would pat her. (Id. ¶ 32.) When asked about the child-on-child touching, R.L. stated that she knew about this because her mother told her. (Id. ¶ 33.)

On May 27, 2008, Defendant Stacy Long interviewed R.L. a second time at Defendant CAC. (Compl. ¶ 34.) Plaintiff alleges that, "[u]nder repeated and suggestive questioning," R.L. told Defendant Stacy Long that Plaintiff made her touch her back, signaling her neck and chest, and stated that Plaintif told her that she had to do it or she had to go home. (Id. ¶ 36.)

7

On May 29, 2008, Defendant Tim Deal interviewed another minor child, E.M., at Defendant CAC.  (Compl. ¶ 37.)  Plaintiff alleges that, on the way to this interview, E.M.'s mother, Defendant Kelli McDonald, asked E.M. "directly certain suggestive questions, leading the child to falsely indicate that Plaintiff had touched her inappropriately." (Id. ¶ 38.)  Plaintiff alleges that Defendant Kelli McDonald asked E.M. directly if Plaintiff "had 'touched her on her privates' or otherwise hurt her," or if Plaintiff had threatened to kill her.  (Id. ¶¶ 39-40.)

On May 29, 2008, in her interview with Defendant Tim Deal, E.M. stated, "'My momma told me which is which and where they touched me.'"  (Compl. ¶ 41.)  According to Plaintiff, "under repeated and suggestive questioning," E.M.

8

told Defendant Tim Deal about child-on-child touching with A.H. and stated that Plaintiff touched her on top of her clothes.  (Id. ¶ 42.)

Plaintiff alleges that, based on those statements, and without a proper investigation, Defendant Catoosa County, through the Catoosa County Department of Family and Children's Services, and Defendant CCSD, "coerced" Plaintiff into allowing her minor children to be removed from her residence temporarily and to be placed with their father, Defendant Joal Henke.  (Compl. ¶ 43.)  Plaintiff alleges that Defendant Joal Henke repeatedly and suggestively questioned A.H. afterward.  (Id. ¶ 44.)  Plaintiff asserts that, before those allegations arose, Defendant Sarah Henke had showered with A.H. and had "shaved her genital area in

9

front of A.H. while A.H. was in the shower with her."  (Id. ¶ 45.)     Plaintiff   alleges   that   those   actions   "were psychologically devastating to A.H."  (Id. ¶ 46.)

On June 3, 2008, Defendant Suzie Thorne interviewed A.H. at Defendant Greenhouse.  (Compl. ¶ 47.)  According to Plaintiff, under "repeated and suggestive" questioning, A.H. told Defendant Suzie Thorne that "her mother had put medicine on her because she had belly aches and diarrhea," which her father attributed to allergies.  (Id. ¶ 48.) During that same interview, A.H. told Defendant Suzie Thorne that "her father told her that her mother had lied to the police and lied about a lot of people, although A.H. could not remember what her father claimed Plaintiff had lied about."  (Id. ¶ 49.)

10

On June 4, 2008, Defendant Suzie Thorne conducted a third interview of R.L. at Defendant Greenhouse. (Compl. ¶ 50.)   Plaintiff alleges that "[u]nder repeated and suggestive questioning, R.L. told Defendant Suzie Thorne that she remembered that Plaintiff would touch her in her vaginal area with R.L.'s clothes on." (Id. ¶ 52.)  After being asked sixteen times "if there was 'anything else," R.L. "produced a number of fantasy stories involving non-sexual related incidents."   (Id. ¶ 53.)   Plaintiff alleges that, throughout the interview, R.L. stuck to her story that Plaintiff only allegedly touched her in the vaginal area "with clothes . . . on." (Id. ¶ 54.)

On June 11, 2008, Defendant Tim Deal interviewed E.M. a second time at Defendant CAC.  (Compl. ¶ 55.)

11

According to Plaintiff, "[u]nder repeated and suggestive questioning," E.M. stated that "she could not remember what she had said thirteen days before," but that she remembered that Plaintiff had touched her inside her panties.  (Id. ¶ 56.)  E.M. also stated that her mother told her that if she did a good job, she would get a toy.  (Id. ¶ 57.)

According to Plaintiff, before that interview, E.M.'s mother, Defendant Kelli McDonald, "intuited that E.M. had failed to disclose all of the negative things she had to say about Plaintiff."  (Compl. ¶ 58.)  Plaintiff asserts that Defendant Kelli McDonald therefore repeatedly and suggestively questioned E.M. until E.M. made more negative allegations against Plaintiff.  (Id. ¶ 59.)

12

According to Plaintiff, in or around spring 2008, Defendant CAC hired Defendant Evans, "a social worker with a documented history of serious mental illness," to provide therapy for children alleged to be victims of abuse. (Compl. ¶ 60.) Plaintiff asserts that, from June 2008 through December 2008, A.H., R.L., and E.M. attended therapy with Defendant Laurie Evans at Defendant C.A.C. (Id. ¶ 61.) A.H. stopped attending sessions with Defendant Laurie Evans in December 2008, after a court determined that Defendant Laurie Evans should have no further contact with A.H. (Id. ¶ 62.) R.L. and E.M., however, continued therapy with Defendant Laurie Evans until at least April 2010. (Id. ¶ 63.)

13

Plaintiff alleges that, at the onset of therapy, without exercising critical judgment, Defendant Laurie Evans assumed that the allegations of sexual abuse, as described by Defendants Suzie Thorne, Stacy Long, Tim Deal, and CAC, were true.  (Compl. ¶ 64.)   Plaintiff alleges that Defendant Laurie Evans did not think it appropriate to question the "manipulative interviewing techniques" used by those individuals, or the consequences. (Id. ¶ 65.) Instead, according to Plaintiff, Defendant Laurie Evans simply assumed that Plaintiff had sexually molested A.H., R.L., and E.M., even though no such molestation occurred.  (Id. ¶¶ 66-67.)   Plaintiff alleges that Defendant Laurie Evans ignored the "coercive and manipulative nature" of the interviews, the lack of corroborating physical evidence,

14

denials by eyewitnesses, and peer-reviewed scientific literature in the area of child sexual abuse, and carried on a course of therapy that was negligent, grossly negligent, and manipulative, or that was intentionally designed to manipulate or harm the children. (Id. ¶¶ 68-69.) Plaintiff alleges that Defendant Laurie Evans manipulated the children by using coercive interrogations, and wrote reports to Defendant CAC that were designed to deny Plaintiff access to her children. (Id. ¶ 70.)

Plaintiff alleges that certain Defendants, "[i]n their efforts to conspire and perfect their fabricated and fraudulent criminal charges against Plaintiff and to interfere with the parental and familial relationships of the Plaintiff," regularly met for case conferences at Defendant CAC,

15

beginning soon after the children began therapy and continuing until April 2010. (Compl. ¶¶ 72-73.)

Plaintiff alleges that certain Defendants manipulated A.H., R.L., and E.M. in therapy and in meetings with personnel from Defendant CAC, Defendant Greenhouse, and the Catoosa County District Attorney's Office, to remember Defendants' version of the children's statements in their interviews, and intimidated the children with leading questions in a grand jury proceeding to adopt Defendants' version of those statements, all in an effort "to perfect fabricated and fraudulent criminal charges against Plaintiff." (Compl. ¶ 73.)

On April 1, 2009, Holly N. Kittle conducted a fourth interview of R.L. at Defendant CAC.   (Compl. ¶ 74.)

16

According to Plaintiff, during that interview, R.L. "completely contradicted her statements in previous interviews and made many serious and inculpatory statements of and concerning Plaintiff." (Id. ¶ 75.)

During Plaintiff's trial, on April 14, 2010, R.L. testified that, after the June 4, 2008, interview was completed, she was walking down the hall with Defendant Suzie Thorne when she "just remembered" that Plaintiff "put all four of her fingers together and with her fingers and thumb, penetrated R.L.'s vagina." (Compl. ¶ 76.) According to Plaintiff, Defendant Suzie Thorne testified that, after the interview, R.L. wandered the halls of Defendant Greenhouse and located her in a conference room to tell her similar allegations that she had "just remembered." (Id. ¶ 77(a).)

17

Plaintiff alleges that the statement was not recorded or documented, that Defendant CCSD's case file contains no contemporaneous notes of the statement, and that no materials turned over to Plaintiff during discovery contained that statement.  (Id. ¶¶ 78-80.)

During Plaintiff's trial, on April 19, 2010, Defendant Sherri Wilson testified that, on or about May 24, 2008, R.L. had a discussion with her in her driveway.  (Compl. ¶ 81.) Defendant Sherri Wilson stated that R.L. told her that Plaintiff "had touched her in her privates while she was in the bathtub and in the kitchen."  (Id. ¶ 82.)  Defendant Sherri Wilson then demonstrated a "hand gesture with four fingers together [and] thumb moving up and down."  (Id. ¶ 83.)  Plaintiff contends that none of the discovery produced

18

to her during the criminal proceeding documented that conversation, and that Defendant Tim Deal testified that Defendant Sherri Wilson's testimony was the first that he had heard of such an allegation.  (Id. ¶¶ 84-85.)

Plaintiff further alleges that Defendants did not produce an investigative summary to her during criminal discovery that summarized R.L.'s statements concerning Plaintiff allegedly inserting her fingers into R.L.'s vagina, even though Defendant CCSD contended that it had produced its entire file to Plaintiff's counsel.  (Compl. ¶¶ 87-89.)

The jury found Plaintiff not guilty of each and every allegation.  (Compl. ¶ 90.)  Plaintiff alleges that, afterward, Defendant Sandra Lamb and Defendant Phil Summers made statements to the press about Plaintiff and relating to

19

the allegations of the criminal case, and that many of those statements were false, defamatory, and maliciously made. (Id. ¶¶ 91-92.)

In count one of her Complaint, Plaintiff alleges that Defendants violated her constitutional rights because: (1) Defendants engaged in an unlawful seizure without probable cause; (2) Defendants violated her procedural due process rights; (3) Defendants violated her substantive due process rights; and (4) Defendants' actions violated the equal protection clause. (Compl. ¶¶ 109-114.) In count two of her Complaint, Plaintiff alleges that certain Defendants who are private individuals conspired with Defendants who are state actors to violate Plaintiff's constitutional rights. (Id. ¶¶ 115-123.)   Count three of Plaintiff's Complaint

20

contains a "Monell" liability claim against Defendants Catoosa County, CAC, Greenhouse, and CCSD. (Id. ¶¶ 124-42.)   In count ten, Plaintiff asserts a malicious prosecution claim under federal law. (Id. ¶¶ 186-96.)

Plaintiff's Complaint also asserts a number of state law claims. Those claims include: (1) a negligence claim, as set forth in count four of Plaintiff's Complaint, (id. ¶¶ 143-49); (2) a claim for gross negligence, contained in count five of Plaintiff's Complaint,  (id. ¶ 150-155); (3) a claim for defamation per se, as set forth in count six of Plaintiff's Complaint, (id. ¶¶ 156-68); (4) a claim for intentional infliction of emotional distress, as set forth in count seven of Plaintiff's Complaint, (id. ¶¶ 169-75); (5) an invasion of privacy claim, contained in count eight of Plaintiff's

21

Complaint, (id. ¶¶ 176-85); (6) a claim for malicious prosecution or false arrest arising under state law, as set forth in count ten of Plaintiff's Complaint, (id. ¶¶ 197-205).

## B.   Procedural Background

On May 24, 2010, Plaintiff filed this lawsuit.  (Docket Entry No. 1.)  On June 14, 2010, Defendant Sarah Henke and Defendant Joal Henke filed their respective Motions to Dismiss.  (Docket Entry Nos. 35-36.)  On June 15, 2010, Defendant Greenhouse filed its Motion for More Definite Statement.  (Docket Entry No. 37.)  On that same day, Defendants Catoosa County, Tim Deal, Phil Summers, and CCSD filed their Motion for More Definite Statement and Motion to Dismiss.  (Docket Entry No. 38.) Defendant Lamb also filed her Motion to Dismiss on that same day.  (Docket

22

Entry No. 40.) On June 16, 2010, Defendants DeWayne and Sherri Wilson filed their Motion to Dismiss. (Docket Entry No. 42.) On June 18, 2010, Defendant CAC filed its Motion for More Definite Statement. (Docket Entry No. 54.) Finally, on July 5, 2010, Defendant Suzie Thorne filed her Motion to Dismiss, or, Alternatively, Motion for More Definite Statement. (Docket Entry No. 68.)

Plaintiff has responded to all of the above Motions except for Defendant Suzie Thorne's Motion to Dismiss, or, Alternatively, Motion for More Definite Statement.[1] The

---

[1] Because that Motion raises the same arguments as asserted in the other Motions for More Definite Statement, and to promote efficiency, the Court denies the portion of the Motion that seeks a more definite statement without prejudice. Moreover, because the portion of the Motion requesting that the Court dismiss Plaintiff's Complaint for failure to effect proper service of process on Defendant Suzie Thorne is premature, the Court also denies that portion of the Motion without prejudice.

AO 72A

Court concludes that no reply briefs are necessary for the above Motions.  The Court therefore finds that the Motions are ripe for resolution by the Court.

## II.   Motions for More Definite Statement

Federal Rule of Civil Procedure 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).  The United States Court of Appeals for the Eleventh Circuit has observed that a motion for more definite statement is appropriate where defendants are

24

faced with a shotgun complaint.  Bailey v. Janssen Pharm.,

Inc., 288 F. App'x 597, 608 (11th Cir. 2008) (per curiam).

A complaint is a shotgun complaint where "it is virtually

impossible to know which allegations of fact are intended to

support which claim(s) for relief."  Anderson v. District Bd.

of Trustees of Cent. Fla. Comm. College, 77 F.3d 364, 366

(11th Cir. 1996).  A complaint also is a shotgun pleading

where it "lumps multiple claims together in one count and,

moreover, appears to support a specific, discrete claim with

allegations that are immaterial to that claim."  Ledford v.

Peeples, 605 F.3d 871, 892 (11th Cir. 2010).  "When faced

with a complaint . . . in which the counts incorporate by

reference all previous allegations and counts, the district

court must cull through the allegations, identify the claims,

and, as to each claim identified, select the allegations that appear to be germane to the claim." <u>Id.</u> "This task can be avoided if the defendant moves the court for a more definite statement or if the court, acting on its own initiative, orders a repleader." <u>Id.</u>

The Eleventh Circuit also has observed that, in the case of a shotgun complaint,

> Unless the court requires a repleader - under Rule 12(e) or on its own initiative - a shotgun complaint leads to a shotgun answer. Where, as here, each count incorporates every antecedent allegation by reference, the defendant's affirmative defenses are not likely to respond to a particular cause of action but, instead, to the complaint as a whole. Such disjointed pleadings make it difficult, if not impossible, to set the bounds for discovery. Hence, discovery disputes are inevitable. Resolving them can be time consuming. If the court does not intervene and require the parties to narrow the issues, the discovery disputes continue unabated - until a motion for summary judgment or

26

a pretrial conference brings them to a halt.  At that point, the court is confronted with the time-consuming tasks it avoided earlier - rearranging the pleadings and discerning whether the plaintiff has stated a claim, or claims for relief, and whether the defendant's affirmative defenses are legally sufficient.  If the court performs these tasks, it will have to strike all of the allegations of the complaint and answer that are insufficient, immaterial, or impertinent - so that, when the tasks are finished, the complaint consists of a "short and plain statement of the claim," or claims, for relief, and the answer states "in short and plain terms the [defendant]'s defenses to each claim asserted."

Byrne v. Nezhat, 261 F.3d 1075, 1129-30 (11th Cir. 2001) (footnotes and citation omitted).  Applying the above guidance, the Court finds that it is appropriate to require Plaintiff to provide a more definite statement of her claims.

First, although Plaintiff's Complaint names fifteen Defendants, the Complaint contains very few allegations that describe what each Defendant allegedly did.  Second,

AO 72A

each count of the Complaint incorporates by reference all of the preceding allegations, thus necessarily including facts that are not relevant to certain claims.   Third, Plaintiff's Complaint, for the most part, simply asserts claims against Defendants collectively and fails to identify which claims are asserted against which Defendants and which allegations support each claim for relief.   Fourth, Plaintiff has, for the most part, failed to set forth specific facts supporting her conspiracy claim--instead, she simply alleges that Defendants conspired to violate her constitutional rights. Fifth, Plaintiff's defamation claim fails to identify when the allegedly defamatory statements were made, who allegedly made the statements, or to whom the statements were made or published.   Sixth, Plaintiff's negligence and gross

negligence claims fail to allege adequately which Defendants owed duties to Plaintiff, what those duties were, and how those Defendants allegedly breached those duties.

For the above reasons, the Court directs Plaintiff to file an Amended Complaint that provides a more definite statement of her claims, and to do so within fourteen days of the date of this Order. Plaintiff's Amended Complaint must include simple, concise, and direct factual allegations, separately set forth in sequentially-numbered paragraphs. Plaintiff's Amended Complaint also must specifically set forth the facts and circumstances that support each claim as to each Defendant, and should not include legal arguments, conclusory statements, and repetitive allegations. Plaintiff's Amended Complaint also must specify which factual

29

allegations relate to which of her claims, and which claims relate to each Defendant.

## III. Motions to Dismiss for Improper Service of Process

Defendant Tim Deal argues that Plaintiff failed to effect proper service of process on him because Plaintiff did not serve him personally with a summons and a copy of the Complaint. (Docket Entry No. 38.) Instead, Defendant Tim Deal argues that Plaintiff simply attempted to serve him by making service on his boss, Defendant Phil Summers, and that Defendant Phil Summers is not authorized to accept service of process on behalf of Defendant. (Id.) Defendant Tim Deal therefore contends that the Court should dismiss Plaintiff's claims against him.

AO 72A

Similarly, Defendant Suzie Thorne also asserts that Plaintiff failed to serve her properly with process. (Docket Entry No. 68.) Defendant Suzie Thorne therefore requests that the Court dismiss Plaintiff's claims asserted against her.

For the following reasons, the Court denies Defendant Tim Deal's Motion to Dismiss and Defendant Suzie Thorne's Motion to Dismiss without prejudice. As an initial matter, and as Plaintiff correctly points out, Defendant Tim Deal's Motion to Dismiss for improper service is premature because Federal Rule of Civil Procedure 4(m) allows Plaintiff to effect service of process on a defendant within 120 days after filing her Complaint. Fed. R. Civ. P. 4(m). That same argument applies to Defendant Suzie Thorne's

31

Motion to Dismiss. Plaintiff filed this action on May 24, 2010, and the 120-day period for serving Defendant Tim Deal and Defendant Suzie Thorne with process has not yet expired. Although Plaintiff's service on Defendant Tim Deal and Defendant Suzie Thorne may not have been sufficient, she still has time to correct those deficiencies. Alternatively, even if Plaintiff failed to serve Defendant Tim Deal or Defendant Suzie Thorne properly with process within 120 days after filing her Complaint, Rule 4(m) would give the Court discretion to extend the time period in which Plaintiff could serve those Defendants with process. Fed. R. Civ. P. 4(m). Given all of those circumstances, the Court finds that dismissal of Plaintiff's claims against Defendant Tim Deal and Defendant Suzie Thorne based on allegedly improper

32

AO 72A

service of process is not appropriate at this time.  The Court

therefore denies without prejudice Defendant Tim Deal's

Motion to Dismiss for improper service and Defendant Suzie

Thorne's Motion to Dismiss for improper service.

## III.   Other Motions to Dismiss

Various Defendants also have filed Motions to Dismiss,

arguing that Plaintiff's Complaint fails to set forth claims for

relief against those Defendants.  (Docket Entry Nos. 35-36,

40, 42.)  For the reasons discussed supra Part II., the Court

concludes that requiring Plaintiff to file an Amended

Complaint that provides more detailed allegations

concerning her claims and each Defendant's role in this

case is appropriate.  The forthcoming Amended Complaint

may well moot many of the concerns raised in the various

33

pending Motions to Dismiss.  Moreover, even if the Court concluded that certain portions of Plaintiff's Complaint are deficient as to certain Defendants, the Court would dismiss those claims without prejudice and would allow Plaintiff to file an Amended Complaint that attempted to remedy those deficiencies.  Under those circumstances, the Court finds that it would be premature to consider the Motions to Dismiss at this time.  The Court therefore will deny the various Motions to Dismiss without prejudice to Defendants' filing additional Motions to Dismiss after Plaintiff files her Amended Complaint.

## IV.  Conclusion

ACCORDINGLY, the Court **DENIES WITHOUT PREJUDICE** the Motion to Dismiss filed by Defendant

34

Sarah Henke [35], **DENIES WITHOUT PREJUDICE** the Motion to Dismiss filed by Defendant Joal Henke [36], **GRANTS** the Motion for More Definite Statement filed by Defendant The Greenhouse Children's Advocacy Center [37], **GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART** the Motion for More Definite Statement and Motion to Dismiss filed by Defendants Catoosa County, Georgia, Tim Deal, Phil Summers, and the Catoosa County Sheriff's Department [38],[2] **DENIES WITHOUT PREJUDICE** the Motion to Dismiss filed by Defendant Sandra Lamb [40], **DENIES WITHOUT**

---

[2]The Court **GRANTS** the portion of the Motion that seeks a more definite statement, but **DENIES WITHOUT PREJUDICE** the portion of the Motion that seeks dismissal of Plaintiff's claims against Defendant Tim Deal.

AO 72A

**PREJUDICE** the Motion to Dismiss filed by Defendants DeWayne and Sherri Wilson [42], **GRANTS** the Motion for More Definite Statement Filed by the Children's Advocacy Center of the Lookout Mountain Judicial Circuit, Inc. [54], and **DENIES WITHOUT PREJUDICE** the Motion to Dismiss, or Alternatively, Motion for More Definite Statement [68] filed by Defendant Suzie Thorne.  The Court **ORDERS** Plaintiff to file an Amended Complaint **WITHIN FOURTEEN (14) DAYS OF THIS ORDER** that provides a more definite statement of Plaintiff's claims, as specifically directed in Part II. of this Order.  The Court **DIRECTS** the Clerk to **RE-SUBMIT** this case to the Court after the

36

AO 72A

conclusion of the fourteen-day period.

IT IS SO ORDERED, this the 6th day of July, 2010.

_____
UNITED STATES DISTRICT JUDGE

AO 72A