**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

TONYA RENEE CRAFT,          )
                                      )
             Plaintiff,      )
vs.                                )
                                      )
SANDRA LAMB, in her individual   )     CIVIL ACTION
capacity; SHERRIWILSON, in her   )     FILE NO. 4:10-CV-0068-HLM
individual capacity; DEWAYNE WILSON, )
in his individual capacity; JOAL HENKE, )
in his individual capacity; SARAH HENKE, )
in her individual capacity; KELLI   )
MCDONALD, in her individual capacity   )
TIM DEAL, in his individual capacity;   )
CATOOSA COUNTY, GEORGIA, a gov-   )
ernmental entity; THE CATOOSA   )
COUNTY SHERIFF'S DEPARTMENT, a )
municipal entity; PHIL SUMMERS, in his )
individual and professional capacity; SUZIE )
THORNE, in her individual and pro-   )
fessional capacity STACY LONG, in her   )
individual and professional capacity;   )
LAURIE EVANS, in her individual and   )
professional capacity; CHILDREN'S   )
ADVOCACY CENTER OF THE LOOK-   )
OUT MOUNTAIN JUDICIAL CIRCUIT,   )
INC. , a state contracting agency; THE   )
GREENHOUSE CHILDREN'S   )
ADVOCACY CENTER, a state   )
contracting agency                 )
                                      )
             Defendants.     )

_____

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, TONYA RENEE CRAFT, by and through the undersigned counsel, and files this her Amended Complaint against the above-named Defendants, jointly and severally, as follows:

### I. JURISDICTION

1. This action is brought pursuant to 42 USC §§ 1983, 1988 and the Fourth Amendment and Fourteenth Amendments of the Constitution of the United States of America. Jurisdiction is based on 28 USC §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory and Constitutional provisions.

2. Suit is also brought against the Defendants pursuant to 28 USC § 1367, *et seq.*, as supplemental claims that are part of the same case and controversy.

### II. PARTIES

3. Plaintiff Tonya Renee Craft is a resident of Tennessee. Her current address is 2191 Durban Point Drive, Soddy Daisy, Tennessee 37379.

4. Defendant Sandra Lamb at all times relevant to this cause of action has been a resident of the State of Georgia. Her address is 249 Classic Trail, Ringgold, Georgia 30736. She is being sued in her individual capacity.

5. Defendant Sherri Wilson at all times relevant to this cause of action has been a resident of the State of Georgia. Her address is 311 Cloudcrest Drive, Rossville,

Georgia 30741.  She is being sued in her individual capacity.

6.　　Defendant DeWayne Wilson at all times relevant to this cause of action has been a resident of the State of Georgia.  His address is 311 Cloudcrest Drive, Rossville, Georgia 30741.  He is being sued in his individual capacity.

7.　　Defendant Joal Henke at all times relevant to this cause of action has been a resident of the State of Tennessee.  His address is 9733 Waycross Circle, Ooltewah, Tennessee 37363.  He is being sued in his individual capacity.

8.　　Defendant Sarah Henke at all times relevant to this cause of action has been a resident of the State of Tennessee.  Her address is 9733 Waycross Circle, Ooltewah, Tennessee 37363. She is being sued in her individual capacity.

9.　　Defendant Kelli McDonald at all times relevant to this cause of action has been a resident of the State of Georgia. Her address is 1275 Back Valley Road Chickamauga, GA 30707.  She is being sued in her individual capacity.

10.　　Defendant Tim Deal at all times relevant to this cause of action has been an employee of Defendant Catoosa County Sheriff's Department, a municipal agency. Defendant Deal may be served with a copy of the Summons and Complaint at 312 LaFayette Street, Ringgold, Georgia, 30736.

11.　　Defendant Catoosa County at all times relevant to this cause of action has been a municipal and governmental agency of the State of Georgia. Defendant may

be served through the Chairman of the County Board of Commissioners, Keith Greene at 800 Lafayette Street, Ringgold, Georgia 30736.

12.   Defendant Catoosa County Sheriff's Department (hereafter CCSD") at all times has been a division of Catoosa County Georgia, a municipal and governmental agency of the State of Georgia. Defendant CCSD may be served through the Chairman of the County Board of Commissioners, Keith Greene at 800 Lafayette Street, Ringgold, Georgia 30736.

13.   Defendant Phil Summers at all times relevant to this cause of action has been an employee of Defendant CCSD, a municipal agency. His address for service of this action is 312 LaFayette Street, Ringgold, Georgia, 30736.

14.   Defendant Suzie Thorne at all times relevant to this cause of action was an employee of Defendant The GreenHouse Children's Advocacy Center (hereafter "GREENHOUSE") and/or such other neighboring Children's Advocacy Center of Georgia, an agency contracting with law enforcement authorities in Catoosa County, Georgia. Defendant Thorne may be served with a copy of the Summons and Complaint at the Whitfield County Sherriff's Department, 805 Professional Boulevard, Dalton, Georgia 30720.

15.   Defendant Stacy Long at all times relevant to this cause of action was an employee of Defendant Children's Advocacy Center Of The Lookout Mountain

Judicial Circuit, Inc.   (hereafter "CAC-LMJC"), 510A Thomas Road, Oglethorpe, Georgia 30742, and/or such other neighboring Children's Advocacy Center of Georgia, an agency contracting with law enforcement authorities in Catoosa County, Georgia. Defendant Long may be served with a copy of the Summons and Complaint at 510A Thomas Road, Oglethorpe, Georgia 30742.

16.    Defendant Laurie Evans for all times relevant to this cause of action was an employee of Defendant CAC-LMJC and/or such other neighboring Children's Advocacy Center of Georgia, an agency contracting with law enforcement authorities in Catoosa County, Georgia. Defendant Evans may be served with a copy of the Summons and Complaint at 510A Thomas Road, Oglethorpe, Georgia 30742.

17.    Defendant CAC-LMJC was at all times relevant to this cause of action a state contracting agency doing business in Catoosa County, Georgia. CAC-LMJC may be served with a copy of the Summons and Complaint upon their registered agent, Mary Jane P. Melton, 103 East Patton Street, Lafayette, Georgia 30728.

18.    Defendant GREENHOUSE was at all times relevant to this cause of action a state contracting agency doing business in Whitfield County, Georgia. In

connection with the present action, Defendant GREENHOUSE performed certain functions relating to an action being investigated by Catoosa County, Georgia The GREENHOUSE may be served with a copy of the Summons and Complaint at 600 East Morris Street, Dalton, GA 30721-3405.

## III. <u>VENUE</u>

19.   Pursuant to 28 USC § 1391, *et. seq.*, venue is proper in the Rome Division of the Northern District of Georgia as a majority of the Defendants reside therein and the transactions and occurrences complained of, occurred in the Northern District of Georgia.

## IV.  <u>FACTUAL ALLEGATIONS</u>

20.   Plaintiff has two minor children: A.H., age eight, and K.H., age eleven.

21.   On May 19, 2008, Defendant Sandra Lamb reported in a telephone call to Georgia DFCS worker Rhonda Lawson that her minor daughter, R.L. had been involved in child-on-child sexual touching with Plaintiff Tonya Renee Craft's daughter A.H., a child two years younger than R.L.

22.   Despite repeated and suggestive questioning in which Plaintiff was continually mentioned by Defendant Sandra Lamb by name, according to Defendant Sandra Lamb's report to the DFCS worker, Plaintiff Tonya Renee Craft was not implicated.

23.   Nonetheless, Sandra Lamb attempted to manipulate R.L.'s statements in order to implicate Plaintiff in criminal activity.

24.   On May 23, 2008, during a last-day-of-school party at her home, Defendant Sherri Wilson noticed that, K.W., a minor child, used sidewalk chalk to write "sex and kissing xoxoxo" in six inch letters.

25.   Defendant Sherri Wilson called K.W.'s parents who came to the home and had a detailed discussion with Sherri Wilson and Defendant DeWayne Wilson. In that discussion, no child raised any allegations against Plaintiff. however, Mr. and Mrs. Wilson ranted about Plaintiff concerning other matters and suggested that she was the perpetrator behind the childrens' allegations.

26.   Further during this discussion, Defendants DeWayne and Sherri Wilson made numerous false and derogatory comments about Plaintiff to K.W.'s parents, which included, but are not limited to the following:

(a)   Sherri and DeWayne Wilson mentioned their anger towards Plaintiff as the result of Plaintiff wanting to "hold back" their child from promotion to first grade since Plaintiff was the Wilson child's teacher in the 2007-2008 school year.

(b)   During a parent-teacher conference in the Spring of 2008 with the Plaintiff, Defendants, DeWayne and Sherri Wilson became so upset with Plaintiff that

they either or individually threatened her by saying "someone will pay for this", which was directed at Plaintiff.

(c)     Defendants, DeWayne and Sherri Wilson made further comments to K.W.'s parents that were derogatory in nature concerning Plaintiff's actions at the Walker County Gala wherein Plaintiff was a guest of Defendants Sherri and Dewayne Wilson.

(d)     During this conversation with K.W.'s parents, the Defendants, Sherri and Dewayne Wilson made further repeated derogatory comments about the Plaintiff, none of which had anything to do with the allegations of the children that existed at that time, including without limitation, statements indicating that Plaintiff drank excessively and was inappropriately promiscuous.

(e)     Defendants Sherry and DeWayne Wilson further used several expletives to describe Plaintiff.

27.     Following this discussion, the parents of K.W. left the Wilson residence and, thereafter, questioned K.W. about the incident.

28.     For the next 3 days, Defendant Sandra Lamb began repeatedly and suggestively questioning her daughter, R.L., including questions that directly implicated Plaintiff. Defendant, Sandra Lamb, has no training or experience in questioning children concerning alleged sexual abuse.

8

29.    After hours and/or days of such inappropriate questioning, R.L. allegedly made a statement regarding inappropriate touching.

30(a)    Following the discussion with K.W.'s parents, Defendants Sherri Wilson and DeWayne Wilson had discussions with Defendant Sandra Lamb and Defendant Joal Henke about these allegations.

(b)    In the midst of such discussions, Defendant DeWayne Wilson, the former coroner of neighboring Walker County, Georgia, initiated the CCSD's involvement in this case by contacting his close personal friend, Detective Steven Keith, an employee of Defendant CCSD. At that point in time, Detective Keith had only been involved investigating sex crimes involving children for 2 to 3 months and had little training in this area.

(c)    During this conversation, DeWayne Wilson reported that Plaintiff had allegedly engaged in inappropriate touching of minor children.

(d)    In fact, DeWayne Wilson had no actual knowledge of such alleged conduct and had no good faith basis to believe that such conduct had occurred.

31(a)    Thereafter, Defendant Sandra Lamb contacted Detective Steven Keith of the CCSD, and arranged a first interview of R.L. with Defendant CAC-LMJC.

(b)    At the time Detective Keith arranged such interview, he had no evidence to indicate that Plaintiff had engaged in any illegal conduct.

9

32.    On May 27, 2008, R.L., Defendant Sandra Lamb's minor daughter, was interviewed by Defendant Stacy Long at Defendant CAC-LMJC.

33.    Under repeated and suggestive questioning by Defendant Long during this interview, the child told Defendant Stacy Long about child on child touching with Mrs. Craft's six-year-old daughter A. H. but made no allegations against plaintiff which would represent any of the crimes Plaintiff was charged with.

34.    R.L. further stated that Plaintiff kissed her on the head, neck and shoulder and would pat her.

35.    When asked about the, child on child touching, R.L. said she knew about this because  "My momma told me."

36.    On May 27, 2008,  R.L. was interviewed *a second time* by Defendant Stacy Long at Defendant CAC_LMJC.

37.    What transpired in the interval between the two interviews of R.L. is undocumented; however, it is un-rebutted that R.L. spent the interval between the two interviews primarily with her mother.

38.    Under repeated and suggestive questioning, the child told Defendant Stacy Long she allegedly remembered (*paraphrasing*) that Plaintiff allegedly made her "touch her back" (signaling her neck and chest) and (*paraphrasing*) "She told me I had to do it or I had to go home."

39.    Throughout these two interviews, Defendant Long repeatedly attempted to modify R.L.'s answers in an effort to get R.L. to improperly implicate Plaintiff in criminal activity.

40.    During the phone calls described above between Defendants Sherri Wilson, Sandra Lamb, Joal Henke, these Defendants conspired to falsely claim that E.M. was also an alleged victim of inappropriate touching by Plaintiff.

41.    In conjunction with this plan, these Defendants notified Defendant CCSO and/or Defendant Tim Deal, about an incident in 2006 involving child on child contact between E.M. and A.H.

42.    Thereafter, on May 29, 2008, E.M. was interviewed by Defendant Tim Deal at Defendant CAC-LMJC.

43.    Prior to this interview, Defendant Kelli McDonald spoke with Defendants Sandra Lamb and/or Sherri Wilson concerning their plan to raise these false allegations against Plaintiff.

44.    As a result, Defendant Kelli McDonald, asked E.M. directly certain suggestive questions on the way to E.M.'s interview on May 29, 2008, leading the child to falsely indicate that Plaintiff had touched her inappropriately.

45.    Prior to Defendant Kelli McDonald questioning her daughter about these allegations, E.M. had made no allegations against Plaintiff of any kind.

46.    Specifically, Defendant Kelli McDonald asked E.M. directly if Plaintiff had "touched her on her privates" or otherwise hurt her, an issue which had never been raised by the child prior to this questioning.

47.    Further, Defendant Kelli McDonald asked E.M. directly whether Plaintiff had threatened to kill her, or otherwise hurt her, issues which had never been raised by the child prior to this questioning.

48.    On May 29, 2008, in her interview with Defendant Tim Deal, E.M. told Defendant Deal "My momma told me which is which and where they touched me."

49.    In this interview, under repeated and suggestive questioning by Defendant Deal, E.M. told Defendant Deal about child on child touching with Plaintiff's six-year-old daughter A.H. and that Plaintiff allegedly touched her on top of her clothes.

50.    Throughout this interview, Defendant Deal repeatedly attempted to modify E.M.'s answers in an effort to get E.M. to improperly implicate Plaintiff in criminal activity.

51.    On May 30, 2008, Defendant Catoosa County, by and through Defendant CCSD, Defendant Tim Deal and the Catoosa County Department of Family and Children ("DFACS") forced Plaintiff to agree to having her minor children

removed from her residence and placed with their father, Defendant Joal Henke.

52.   Specifically, Defendants Catoosa County and CCSD sent armed police officers (including Defendant Deal) to Plaintiff's property to wait while a representative of DFACS informed Plaintiff that she could either agree to the removal or the children would be taken into custody of the County authorities.

53.   Such actions were taken at the direction and/or with the consent of Defendant Phil Summers.

54.   At the time Defendants Catoosa County and CCSD took such actions, they did not have any evidence that Plaintiff had committed any crimes.

55.   Thereafter, Defendant Joal Henke received numerous and repeated telephone calls from Defendants Sherri Wilson and Sandra Lamb in which they accused Plaintiff on inappropriately touching minor children.

56.   After receiving these calls Defendant, Joal Henke repeatedly and suggestively questioned A.H., Plaintiff's then six-year-old daughter with questions formulated or based upon the telephone calls he had with Defendants Sherri Wilson and Sandra Lamb.

57.   During such questioning, Defendant Joal Henke suggested the idea that Plaintiff had inappropriately touched her, even though A.H. continued to assert

that the only time Plaintiff had touched her was when applying medicine to her and when bathing her.

58.  Despite these statements from A.H., Defendant Joal Henke continued to manipulate A.H. to try to get her to implicate Plaintiff in wrongdoing.

59.  Defendant Joal Henke's statements to A.H. included, without limitation, statements indicating that that Plaintiff had lied to the police, that Plaintiff had lied for a lot of people, that Plaintiff had engaged in wrongdoing and that Plaintiff was going to be sent to jail.

60.  Defendant Sarah Henke also participated in Defendant Joal Henke's efforts to manipulate A.H. into making false allegations against Plaintiff by also informing A.H. that Plaintiff, her mother, had lied and had engaged in other wrongful conduct.

61.  Such actions by Defendants Sarah Henke and Joal Henke were intentionally designed to alienate A.H.'s affections for Plaintiff and to try to manipulate A.H. to make false allegations regarding Plaintiff.

62.  Prior to any of these allegations arising, Defendant Sarah Henke had showered with A.H. on multiple occasions and had shaved her genital area in front of A.H. while A.H. was in the shower with her.

63.  Such actions were psychologically devastating to A.H.

64.    On June 3, 2008, following her May 30, 2008 removal from her mother's care, custody and control, A.H. was interviewed by Defendant Suzie Thorne at Defendant GREENHOUSE.

65.    Defendant GREENHOUSE and Defendant Suzie Thorne were utilized for this interview at the request of Defendant CCSD, Defendant Tim Deal, the Catoosa County District Attorney's Office and/or Defendant Catoosa County.

66.    During this interview, under Defendant Suzie Thorne's repeated and suggestive questioning, A.H. told Defendant Thorne that her mother had put medicine on her bottom because she had belly aches and diarrhea, which her father, Defendant Joal Henke, opined was attributable to allergies.

67.    A.H. further stated that Plaintiff had touched her vaginal area while applying this medicine.

68.    Other than applying medicine to A.H., A.H. made no other disclosures about Plaintiff.

69.    During this June 3, 2008 interview, AH also told Defendant Thorne that her father, Defendant Joal Henke, told her that her mother had lied to the police and lied about a lot of people, although A.H. could not remember what her father claimed Plaintiff had lied about.

70.    Throughout this interview, Defendant Thorne repeatedly attempted to modify

A.H.'s answers in an effort to get A.H. to improperly implicate Plaintiff in criminal activity.

71.   On June 4, 2008, R.L. was interviewed *a third time*, this time by Defendant Suzie Thorne at Defendant GREENHOUSE.

72.   What transpired in the interval between interviews two and three for R.L. is undocumented; however, it is un-rebutted that R.L. spent the interval between the two interviews primarily with her mother, Defendant, Sandra Lamb, and during which the telephone calls and discussions between Defendants Sherri Wilson, Sandra Lamb, Kelli McDonald and Joal Henke continued.

73.   Under repeated and suggestive questioning, R.L. told Defendant Suzie Thorne that she remembered that Plaintiff would touch her in her vaginal area with RL's clothes on.

74.   During this third interview, R.L. was asked sixteen times if there was "anything else?", whereupon the child produced a number of fantasy stories involving non-sexual related incidents.

75.   Throughout this lengthy third interview, R.L. continued to stick to her story that Plaintiff had only allegedly touched her in the vaginal area with clothes R.L.'s on.

76.   Throughout this interview, Defendant Thorne repeatedly attempted to modify

R.L.'s answers in an effort to get R.L. to improperly implicate Plaintiff in criminal activity.

77.    On June 11, 2008, E.M. was interviewed *a second time* by Defendant Deal at Defendant CAC-LMJC.

78.    E.M. spent the interval between the two interviews in the care and custody of her mother, Defendant, Kelli McDonald, and the telephone calls and discussions between Defendants Sherri Wilson, Sandra Lamb, Kelli McDonald and Joal Henke continued.

79.    Under repeated and suggestive questioning, E.M. told Defendant Deal that she could not remember what she had said thirteen days before but she remembered that Plaintiff allegedly (*paraphrasing*) "touched me inside my panties".

80.    During this interview, E.M. also remembered that her mother told her that if she did a good job, she would get a toy.

82.    On several occasions during the two interviews he conducted with E.M., Defendant Deal manipulated E.M. into giving different responses to questions he had originally asked.

83.    These modifications were designed to manipulate E.M. into providing information which implicated Plaintiff in a crime.

84.    Prior to this interview and after numerous calls with Defendants Sherri Wilson

and Sandra Lamb, E.M.'s mother, Defendant Kelli McDonald, "intuited" that E.M. had failed to disclose all of the negative things she had to say about Plaintiff.

85. As such, Defendant Kelli McDonald proceeded to repeatedly and suggestively question E.M. until E.M. made additional negative allegations against Plaintiff.

86. Such questioning was intentionally designed to cause E.M. to change her story and provide statements which implicated Plaintiff of a crime.

87. Shortly after Defendant DeWayne Wilson initiated the 'investigation' of Plaintiff by CCSD, Defendant Deal was assigned as the lead investigator in this case.

88. Detective Steven Keith also participated in such 'investigation', despite the fact that he had personal friendships with one or more of the parent's who were alleging that Plaintiff had engaged in this inappropriate behavior.

89. Throughout the course of this investigation Defendant Deal and the other members of the CCSD who were working on this case refused to interview witnesses who indicated they had information which would tend to show Plaintiff did not commit the acts alleged.

90. Defendant Deal and the other members of the CCSD working on this case also failed and refused to interview other teachers, students and/or parents who

regularly observed Plaintiff's interaction with A.H., R.L. and/or E.M. and who could have disputed the allegations that Plaintiff had engaged in any illegal or improper conduct.

91.   Defendant Deal and the rest of the members of the CCSD working on this investigation repeatedly ignored evidence and statements which tended to show Plaintiff did not commit the acts alleged.

92.   All such actions of Defendant Deal and the rest of the members of the CCSD working on this investigation described in Paragraphs 89 through 91 above were taken intentionally in an effort to ensure that Plaintiff was convicted of the offenses with which she was charged.

93.   At all times throughout this investigation, Defendant Deal and the rest of the members of the CCSD working on this investigation, were employees of Defendant CCSD, a division of Defendant Catoosa County, and were acting under the direction and supervision of Defendant Phil Summers.

94.   In or around Spring 2008, Defendant CAC-LMJC hired Defendant Laurie Evans a social worker with a documented history of serious mental illness, as an employee to provide "therapy" for children who were alleged to be victims of abuse.

95.   From June 2008 through December 2008, A.H., R.L. and E.M. attended

"therapy" with Defendant Laurie Evans at Defendant CAC-LMJC.

96.    In December 2008, A.H. ceased attending such sessions after a court reviewing the situation determined that Defendant Laurie Evans should have no further contact with A.H.

97.    R.L. and E.M. continued in "therapy" with Defendant Laurie Evans at Defendant CAC-LMJC, until at least April , 2010.

98.    At the onset of "therapy", while exercising no critical judgment whatsoever, Defendant Evans assumed that sexual abuse, as Defendants Suzie Thorne, Stacy Long, Tim Deal and CAC-LMJC had described it, was in fact true.

99.    Defendant Evans did not think it appropriate to question Defendants Suzie Thorne, Stacy Long and Tim Deal's manipulative interviewing techniques or their consequences.

100.   Defendant Evans, throughout such therapy, continued to manipulate A.H., R.L. and E.M. to make them assert that Plaintiff had inappropriately touched them, when in fact no such touching had occurred.

101.   At all times throughout this "therapy" Defendant Evans was acting as an employee of Defendant CAC-LMJC.

101.   Defendant Evans, like other state actors, simply assumed that A.H., R.L. and E.M. had been sexually molested by Plaintiff Tonya Renee Craft.

101. In fact, no such molestation ever occurred.

102. Ignoring the coercive and manipulative nature of the interviews by Defendants Suzie Thorne, Stacy Long, Tim Deal and CAC-LMJC, the lack of physical evidence that would corroborate allegations of sexual abuse, the clear denials of eye-witnesses and peer-reviewed scientific literature in the area of child sexual abuse, Defendant Laurie Evans carried on a course of "therapy" that was negligent, grossly negligent and/or was designed to make these children allege that they had been molested.

103. Defendant Evans continued to manipulate the children with coercive interrogations and continued to write reports to CAC-LMJC designed to deny Plaintiff visitation access to her children.

104. In their efforts to conspire and perfect their fabricated and fraudulent criminal charges against Plaintiff and to interfere with the parental and familial relationships of the Plaintiff, Defendant Evans, Defendant Long, Defendant Deal and other members of the "Treatment Team", regularly met for "case conferences" at the CAC-LMJC.

105. These "case conferences" began soon after the children were placed in therapy and they continued until April, 2010.

106. In their efforts to perfect fabricated and fraudulent criminal charges against

Plaintiff, as shown above, Defendants Joal Henke, Sarah Henke, Sandra Lamb, Sherry Wilson, DeWayne Wilson, Kelli McDonald manipulated and/or coerced A.H., R.L and E.M. to falsely claim Plaintiff had improperly touched them.

107.  In a further effort to perfect fabricated and fraudulent criminal charges against Plaintiff, as shown above, Defendants Thorne, Long, Evans and Deal manipulated A.H., R.L. and E.M. in "therapy" and in interviews and meetings with personnel from the CAC-LMJC, the GREENHOUSE, the CCSD and the Catoosa County District Attorney's Office, a division of Defendant Catoosa County, to falsely allege that Plaintiff had improperly touched these children.

108.  All such actions described in Paragraph 107 above were done while such individuals were employed by Defendants GREENHOUSE, CAC-LMJC and CCSD respectively and were done in the course of their employment with such agencies.

109.  Further, Defendants CCSD and Catoosa County, by and through members of the CCSD and the Catoosa County District Attorney's Office intimidated and manipulated A.H., R.L. and E.M. with leading and suggestive questions in a Grand Jury proceeding designed to once again cause these children to make false allegations of abuse by Plaintiff in order to obtain a criminal indictment against Plaintiff.

110.   On April 1, 2009 R.L. was interviewed *a fourth time,* now by interviewer Holly
N. Kittle at Defendant CAC-LMJC.

111.   During this interview, R.L. completely contradicted her statements in previous
interviews and made many serious and inculpatory statements of and
concerning Plaintiff.

112.   At trial on April 14, 2010 in the matter of *State of Georgia vs. Tonya Renee
Craft* - [Superior Court of Catoosa County - Case No.  2008-SU-CR-534] R.L.
testified that *after* the June 4, 2008 interview was completed . . . after she had
been asked sixteen times if there was "anything else?" . . . R.L. was walking
down the hallway with interviewer Suzie Thorne and "just remembered" that
Miss Tonya put all four of her fingers together and with her fingers and thumb,
penetrated R.L.'s vagina.

113.   Defendant Suzie Thorne testified that after such interview, R.L. wondered the
halls of the GREENHOUSE and located her in a conference room to tell her
similar allegations that she had "just remembered";

114.   Defendant Suzie Thorne did not recall R.L. making any such inculpatory
statements to her regarding Plaintiff in the hallway following the June 4, 2008
interview, but only some time later when R.L. located her in the building where
she was working.

115.    Neither Defendant Suzie Thorne, nor any other employee of Defendant GREENHOUSE or of Defendant CCSD considered such alleged statement significant enough to record such statement on video or audio.

116.    Additionally, although Defendant Thorne stated that a member of the CCSD was present when this statement was made and took contemporaneous notes, no such contemporaneous notes are contained in the CCSD file and no such notes were produced in discovery in connection with the pending criminal charges against Plaintiff relating to these allegations.

117.    In fact, there was absolutely no documentation of this conversation in any file, document, report or summary delivered by the State to the Defense in any of the documentation provided during the course of discovery.

118.    At trial April 19, 2010 in the matter of *State of Georgia vs. Tonya Renee Craft* - [Superior Court of Catoosa County - Case No. 2008-SU-CR-534] Defendant Sherri Wilson testified that on or about May 24, 2008, RL had a discussion with her in Defendant Wilson's driveway.

119.    According to Defendant Sherri Wilson, R.L. told her that Plaintiff had touched her in her privates while she was in the bathtub and in the kitchen.

120.    Defendant Wilson demonstrated for the jury with a hand gesture with four fingers together & thumb moving up and down.

121. There was absolutely no documentation of this conversation, or any conversation with Sherri Wilson, in any file, document, report or summary delivered by the State to the Defense in connection with discovery compliance.

122. In fact, Defendant Tom Deal testified during the criminal trial that Defendant Sherri Wilson's testimony to this effect in trial was the first that he had heard of any such disclosure.

123. Such testimony by Sherri Wilson was false and was made in an effort to have Plaintiff convicted for a crime she did not commit.

124. At trial on April 21 and 22, 2010, Defendant Tim Deal testified that his file in the past was in the same condition and with the same documentation "as it is today".

125. Whereupon Defendant Deal produced an Investigative Summary authored by his co-detective, Steven Keith, which was *allegedly dictated* 07-08-08 / *allegedly typed* 07-27-08, but which was never provided to Plaintiff in connection with discovery, even though the entire CCSD investigative file was supposedly provided to Plaintiff's counsel for review prior to the criminal trial.

126. In this summary, Defendant Keith, an employee of Defendant CCSD, wrote as follows:

"***After the interview***, [R.L.] came back in to speak with Suzie. [R.L.] thanked

Suzie for allowing her to speak with her and stated there was something else that she did not tell Suzie. [R.L.] then told Suzie that Tonya had inserted her finge*rs* into her vagina and it felt bad." *emphasis added.*

127.   This document was absolutely not in the material turned over in discovery nor was it in the material two defense attorneys pored over, a month before trial, which included the ***entire*** CCSD file on this investigation.

128.   Several of the named Defendants herein intentionally provided false testimony under oath in an effort to convincer the jury to convict Plaintiff of offenses which she had not committed, including, without limitation the following:

(a)   Defendant Deal provided false testimony, as described in paragraphs 125 through 127 above, and indicated that the document had been in his file at all times.

(b)   Defendant Sherri Wilson provided false testimony regarding the alleged disclosure by R.L. in her driveway and the demonstration by R.L. of the hand gesture described in Paragraphs 119 and 120 above.

(c)   Defendant Thorne provided false testimony regarding the alleged off-camera disclosure by R.L. between interviews as described in Paragraphs 113-116 above.

(d)   Defendant Joal Henke provided false testimony about an alleged lesbian affair

that Plaintiff had engaged in and about an alleged incident when Plaintiff had insisted that they watch lesbian pornography. Neither of these incidents in fact occurred.

(e)    Defendant Sarah Henke provided false testimony indicating that she had never shaved her vaginal area in the shower in front of A.H. when in fact she had already admitted to Dr. Ann Hazzard, a court-appointed forensic evaluator, that she had shaved her vaginal area while showering with A.H. Additionally, Defendant Sarah Henke falsely testified that A.H. had horrible grooming habits, had matted hair, was constantly dirty and needed Defendant Sarah Henke to bathe with her in order to assist her in maintaining her hygiene;

(f)    Defendant Kelli McDonald provided false testimony under oath that she had not requested Plaintiff to co-sign on a utility account with her in an effort to allow her son to play baseball at a park which was not zoned for her residence.

(g)    Defendant Lamb provided false testimony about allegations which she claimed R.L. had made to her about alleged improper touching by Plaintiff which allegations were never in fact made by R.L.

(h)    Defendant Evans provided false testimony regarding the diagnosis of her own mental health impairment, as well as regarding pleadings which she had filed in court.

129.  In addition, the Catoosa County District Attorney's office permitted a live feed of all testimony to go to a room where many of their witnesses were waiting prior to their testimony in direct violation of the rule of sequestration which was invoked.

130.  Such live feed was designed to allow many of the State's witnesses, including, without limitation, Defendants Lamb, Sherri Wilson, Thorne, Long, Joal Henke, Sarah Henke and Kelli McDonald to listen to the testimony of other witnesses to allow them to alter their testimony to match that of the other witnesses testifying for the State.

131.  At trial in connection with these criminal charges, Plaintiff was found not guilty of each and every allegation contained in the indictment relating to the allegations described herein.

132.  Thereafter, Defendant Sandra Lamb and Defendant Phil Summers made statements to the press about Plaintiff and relating to the allegations involved in the criminal case.

133.  Specifically, in May 2010, Defendant Lamb gave a recorded interview on television in which she states, *inter alia*, that the "jury got it wrong" and that the "justice system failed our children".

134.  Lamb further indicated in this interview that Plaintiff was guilty of child

molestation.

135.   Such statements were made by Lamb maliciously and with knowledge that they were false.

136.   Defendant Summers made at least two statements to the press in May 2010 following Plaintiff's not guilty verdict that contained defamatory information.

137.   In such statements, Defendant Summers also indicated that the jury verdict was incorrect and that Plaintiff was in fact guilty of the crimes with which she was charged.

138.   Defendant Summers further compared Plaintiff to O.J. Simpson in several instances, indicating that Plaintiff and Simpson were both guilty of the crimes with which they were charged and had manipulated the media to assist them in getting not guilty verdicts.

139.   Such statements by Summers were made maliciously and with knowledge that they were false.

## V.  STATEMENT OF CLAIMS

### ACTIONS UNDER COLOR OF STATE LAW

140.   Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 139 above as if fully set forth herein.

141. In direct contravention to the United States and Georgia Constitutions, US Const, Am XIV, § 1;  Ga. Const, Art I, § I, ¶¶ I, II.  Defendants acted and conspired to engage in a course of conduct the object of which was destruction of the Plaintiff's parental and familial relations, as well as Plaintiff's freedom.

142. Specifically, each of the named Defendants, conspired in an effort to have Plaintiff convicted of false allegations of child molestation, aggravated child molestation and/or aggravated sexual battery through their conduct described above which includes, without limitation, the following specific acts:

(a)    Defendants Lamb, McDonald, Sherri Wilson and Joal Henke each intentionally asked suggestive, manipulative and deceiving questions to R.L., E.M. and/or A.H. both prior to and during the investigation in this case, which questions designed to alter the children's answers to cause them to falsely implicate Plaintiff of criminal conduct.

(b)    Defendants Lamb, McDonald, Sherri Wilson, Sarah Henke and Joal Henke made numerous disparaging comments to R.L., E.M. and/or A.H., including statements that Plaintiff had engaged in illegal conduct, which comments were designed to cause these children to dislike Plaintiff and to manipulate them into stating that Plaintiff had improperly touched them.

(c)    Defendant DeWayne Wilson initiated a criminal investigation centered on

Plaintiff when in fact he had no reasonable belief that any such criminal conduct had taken place and he had heard or seen no evidence indicating that Plaintiff had engaged in any criminal conduct.

(d)  Defendant Joal Henke attempted to alienate A.H. affections for her mother by making false statements to her indicating that Plaintiff had lied to the police, had lied for a lot of people and was likely going to be incarcerated. Additionally, Defendant Joal Henke attempted to alienate A.H.'s affections for Plaintiff by refusing to allow Plaintiff to visit with A.H. through Four Points visitation center, even though such visitation was authorized through Plaintiff's bond conditions.

(e)  Defendant's Lamb, Joal Henke and Catoosa County, through the actions of the CCSD arranged intimidating and manipulative interviews of A.H. , R.L. and E.M., when in fact there was insufficient evidence to warrant such interviews based upon the statements these children had made prior to the interviews.

(f)  Defendant Long, through her employer, Defendant CAC-LMJC, intentionally manipulated the statements of R.L. through her two interviews with R.L. by asking suggestive, leading and repeated questions designed to cause R.L. to implicate Plaintiff of illegal conduct in order to support Defendant Long's theory of what had occurred. Defendant Long further modified certain answers

of R.L. which did not fit Long's theory of Defendant's guilt. Defendant Long also disregarded inconsistent statements made by R.L. and repeatedly attempted to convince R.L. to state that Plaintiff had engaged in illegal conduct with R.L. Such conduct, coupled with the ongoing suggestive questioning of Defendant Lamb, Defendant Sherri Wilson and Defendant Thorne, along with the "therapy" provided by Defendant Laurie Evans, eventually caused R.L. to allege that Plaintiff had committed numerous serious felonies which R.L. did not initially disclose during her first three interviews.

(g)    Defendant Thorne, through her employer, Defendant GREENHOUSE, intentionally manipulated the statements of R.L. through her interview with R.L. by asking suggestive, leading and repeated questions designed to cause R.L. to implicate Plaintiff of illegal conduct in order to support Defendant Thorne's theory of what had occurred. Defendant Thorne further modified certain answers of R.L. which did not fit Thorne's theory of Defendant's guilt. Defendant Thorne also disregarded inconsistent statements made by R.L. and repeatedly attempted to convince R.L. to state that Plaintiff had engaged in illegal conduct with R.L. Such conduct, coupled with the ongoing suggestive questioning of Defendant Lamb, Defendant Sherri Wilson and Defendant Long, along with the "therapy" provided by Defendant Laurie Evans, eventually

caused R.L. to allege that Plaintiff had committed numerous serious felonies which R.L. did not initially disclose during her first three interviews.

(h)     Defendant Thorne, through her employer, Defendant GREENHOUSE, intentionally manipulated the statements of A.H. through her interview with A.H. by asking suggestive, leading and repeated questions designed to cause A.H. to implicate Plaintiff of illegal conduct in order to support Defendant Thorne's theory of what had occurred. Defendant Thorne also disregarded statements made by A.H. to the effect that the only touching that had occurred between Plaintiff and A.H. was when Plaintiff was applying medicine to A.H. and repeatedly attempted to convince A.H. to state that Plaintiff had engaged in illegal conduct with A.H. Such conduct, coupled with the ongoing suggestive questioning of Defendant Joal Henke, Defendant Sarah Henke and the "therapy" provided by Defendant Laurie Evans, eventually caused A.H. to forget her original statements regarding the medicine application and cause her to allege that Plaintiff had committed numerous serious felonies directed at A.H.

(i)     Defendant Deal, through his employers, CCSD and Catoosa County, intentionally manipulated the statements of E.M. through his two interviews with E.M. by asking suggestive, leading and repeated questions designed to

cause E.M. to implicate Plaintiff of illegal conduct in order to support Defendant Deal's theory of what had occurred. Defendant Deal further modified certain answers of E.M. which did not fit Deal's theory of Defendant's guilt. Defendant Deal also disregarded inconsistent statements made by E.M., disregarding statements clearly indicating that E.M was being rewarded for providing negative testimony against Plaintiff and repeatedly attempted to convince E.M. to state that Plaintiff had engaged in illegal conduct with E.M. Such conduct, coupled with the ongoing suggestive questioning of Defendant McDonald and the "therapy" provided by Defendant Laurie Evans, eventually caused E.M. to allege that Plaintiff had committed numerous serious felonies which E.M. did not initially disclose during her first interview.

(j)    Defendant CCSD, through Defendant Deal and the other members of the CCSD who were working on this case refused to interview witnesses who indicated they had information which would tend to show Plaintiff did not commit the acts alleged. They also failed and refused to interview other teachers, students and/or parents who regularly observed Plaintiff's interaction with A.H., R.L. and/or E.M. and who could have disputed the allegations that Plaintiff had engaged in any illegal or improper conduct. They further repeatedly ignored evidence and statements which tended to show Plaintiff did not commit the acts

34

alleged, including without limitation direct contradictions in the testimony/statements of R.L., E.M. and A.H. All such actions/inactions were done at the direction of, and under the supervision of Defendant Phil Summers.

(l)  Defendant Laurie Evans attempted to manipulate the statements of R.L., E.M. and A.H., through her therapy sessions to get these children to assert that Plaintiff had improperly touched them in order to modify the statements of these children to fit her own theory of Plaintiff's guilt. Such conduct, coupled with the ongoing suggestive questioning of Defendants Joal Henke, Sarah Henke, Kelli McDonald, Sandra Lamb, Sherri Wilson, Suzie Thorne, Stacy Long and Tim Deal eventually caused R.L., E.M. and A.H. to allege that Plaintiff had committed numerous serious felonies which these children did not initially disclose during her initial interviews.

(k)  Defendant Catoosa County, through Defendant CCSD and the Catoosa County District Attorney's Office intentionally arrested Eric Echols, an investigator working for Plaintiff and her attorney's as they were preparing for trial and charged him with false charges of witness tampering in an effort to prevent Plaintiff from adequately preparing for her criminal trial, thereby violating her due process rights by attempting to prevent her from presenting a defense.

(l)  Defendant Catoosa County, through Defendant CCSD and the Catoosa County

District Attorney's Office intentionally encouraged the subornation of perjury by encouraging false testimony at trial, including the testimony of Defendant Deal described above regarding the falsified report and by allowing each of the State's witnesses to hear the testimony of other witnesses at trial.

(m)    Defendant Catoosa County, through Defendant CCSD and the Catoosa County DFACS forced Plaintiff to give up temporary custody of her children to Defendant Joal Henke when they had no evidence of any wrongdoing on Plaintiff's part and no reasonable belief that any such wrongdoing had occurred.

(n)    Defendants Deal, Sherri Wilson, Suzie Thorne, Joal Henke, Sarah Henke, Kelli McDonald, Sandra Lamb and Laurie Evans all provided false testimony under oath during Plaintiff's criminal trial, as described in Paragraphs 128 above in an effort to convince a jury to convict Plaintiff of crimes which she never committed.

(o)    Defendants Sandra Lamb and Phil Summers made false, malicious and defamatory statements following Plaintiff's acquittal of all charges indicating that Plaintiff had in fact committed the acts of child molestation, knowing that Plaintiff was seeking the return of her children in an ongoing custody case with Defendant Joal Henke and further knowing that such statements could impact

36

her ability to regain custody of her children.

(p)    Defendants CAC-LMJC and GREENHOUSE failed to properly train their

employee interviewers, leading to the suggestive, manipulative and leading

interviews of the three children at issue in this case.

143.    All such conduct described in Paragraph 142 above was a conscious effort by

these named Defendants to have Plaintiff falsely convicted of criminal offenses,

to alienate the affections of her children from her and to prevent her from

having contact with her daughter, A.H.

144.    The Plaintiff's familial and parental relationships are clearly protected by the

due process clauses of the United States and Georgia Constitutions, US Const,

Am XIV, § 1;  Ga. Const, Art I, § I, ¶¶ I, II.

145.    By way of example, Plaintiff directs this Court's attention to clearly established

law:

> In addition to the specific freedoms protected by the Bill of Rights, the
> liberty specially protected by the Due Process Clause includes the right
> to direct the education and upbringing of one's children.
> *Meyer v Nebraska,* 262 US 390, 43 S Ct 625, 67 L Ed 1042 (1923)
>
> The history and culture of Western civilization reflect a strong tradition
> of parental concern for the nurture and upbringing of their children.
> This primary role of the parents in the upbringing of their children is
> now established beyond debate as an enduring American tradition.
> *Wisconsin v Yoder,* 406 US 205, 232; 92 S Ct 1526; 32 L Ed2d 15 (1972)

We have recognized on numerous occasions that the relationship between parent and child is Constitutionally protected.
*Quilloin v Walcott,* 434 US 246, 255; 98 S Ct 549; 54 L Ed2d 511 (1978)

The freedom of parents in the care, custody, and management of their children is a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution.
*Santosky v Kramer,* 455 US 745, 753; 102 S Ct 1388; 71 L Ed2d 599 (1982)

"Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society', *Boddie v Connecticut,* 401 US 371, 376; 91 S Ct 780,785; 28 L Ed2d 113 (1971), rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect.   See, for example, *Turner v Safley,* 482 US 78; 107 S Ct 2254; 96 L Ed2d 64 (1987), *Zablocki v Redhail,* 434 US 374; 98 S Ct 673; 54 L Ed2d 618 (1978), and *Loving v Virginia,* 388 US 1; 87 S Ct 1817; 18 L Ed2d 1010 (1967) (marriage);  *Skinner v Okloma ex rel. Williamson,* 316 US 535, 62 S Ct 1110; 86 L Ed 1655 (1942) (procreation); *Pierce v Society of Sisters,* 268 US 510; 45 S Ct 571; 69 L Ed 1070 (1925), and *Meyer v Nebraska,* 262 US 390; 43 S Ct 625; 67 L Ed 1042 (1923) (raising children)."
*M.L.B. Petitioner v S.L.J.,* 519 U.S. 102, 116; 117 S.Ct. 555; 136 L.Ed.2d 473 (1996).

In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v Granville*, 530 US 57, 66; 120 S Ct 2054, 2060; 147 L Ed2d 49 (2000)

146.    The individual Defendants herein are employees of Defendant Catoosa County,

of Defendant CCSD, of the GREENHOUSE and/or of the CAC-LMJC, and/or

are private persons acting in collaboration and/or conspiracy with other

Defendants who are and were state actors.

147.    Among other wrongs described herein, these state-actor Defendants, private Defendants and the agencies employing the Defendants violated the statutory and Constitutional rights of the Plaintiff and clearly established law, as detailed above.

148.    As a proximate result of the acts and omissions described herein by these state actors, in collaboration and/or conspiracy with the agencies that employed them and with the private Defendants listed herein, the Plaintiff has been damaged.

149.    The damages to the Plaintiff including compensatory, general, exemplary and punitive damages are set forth below.

## QUALIFIED IMMUNITY

150.    Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 149 as if fully set forth herein.

151.    The Defendants knew or should have known that their actions as described herein violated Plaintiff's statutory and Constitutional rights and were contrary to clearly established law.

152.    The acts of the Defendants were not objectively reasonable with respect to the Plaintiff's statutory and Constitutional rights and were contrary to clearly-

established law.

153.   The acts of the Defendants complained of herein, were conducted in bad faith.

154.   The acts of the Defendants complained of herein, were conducted with deliberate indifference to their outcome in the life of the Plaintiff.

155.   The acts of the Defendants complained of herein, were conducted with reckless disregard for their consequences in the life of the Plaintiff and her immediate family.

156.   The acts of the Defendants complained of herein, were unilateral attempts to influence the family relationships enjoyed by the Plaintiff with her children.

157.   The acts of the Defendants were committed in gross disregard for clearly-established Constitutional rights of the Plaintiff and her immediate family.

## COUNT ONE

## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983 *et seq.*

158.   Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 157 as if fully set forth herein.

159.   Defendants Suzie Thorne, Stacy Long, Phil Summers, Tim Deal and Laurie Evans, for all times relevant to this cause of action, were state actors within the meaning of 42 U.S.C. § 1983, *et seq.*

160.   Defendants Catoosa County, the CCSD, the GREENHOUSE and the CAC-LMJC, at all times relevant to this cause of action, were state actor/agencies within the meaning of 42 U.S.C. § 1983 *et seq*.

161.   As detailed in Paragraph 142 above, these state actors, engaged in a course of conduct which violated Plaintiff's statutory and Constitutional rights, contrary to clearly established law, to wit:

A.   **UNLAWFUL SEIZURE**

**Fourth & Fourteenth Amendment Violations:**

1.   Plaintiff is a citizen of the United States.

2.   Plaintiff Tonya Renee Craft possesses privacy rights to be from unwanted governmental intrusion into her life, property and liberty interests.

3.   Plaintiff Tonya Renee Craft possesses liberty rights to be free from seizure and incarceration without probable cause or exigent circumstances.

4.   Plaintiff Tonya Renee Craft was seized and incarcerated by state actors from Catoosa County without probable cause.

5.   The seizure and incarceration of Plaintiff Tonya Renee Craft was not based upon exigent circumstances.

6.    The seizure and incarceration of Plaintiff Tonya Renee Craft was not objectively reasonable.

7.    The seizure and incarceration of Plaintiff Tonya Renee Craft was conducted with reckless disregard for their consequences in the life of the Plaintiff.

8.    The seizure and incarceration of Plaintiff Tonya Renee Craft was a unilateral attempt to influence the family relationships enjoyed by the Plaintiff.

9.    The seizure and incarceration of Plaintiff Tonya Renee Craft was undertaken with gross disregard for clearly established Constitutional rights of the Plaintiff.

10.    As a proximate result of the seizure and incarceration of Plaintiff Tonya Renee Craft, the Plaintiff was damaged.

11.    The damages to the Plaintiff including compensatory, general, exemplary and punitive damages are set forth below.

**B .    PROCEDURAL DUE PROCESS**

**Fourteenth Amendment Violations:**

1.    Plaintiff is a citizen of the United States.

2.    Plaintiff possesses due process rights guaranteed by the Fourteenth

Amendment to the Constitution of the United States of America.

3.    Plaintiff possesses liberty rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States of America to be free from unwanted governmental intrusion into protected relationships without probable cause or exigent circumstances.

4.    (a) Defendant Catoosa County, through the CCSD and/or the Catoosa County DFACS, state actors, required the removal of Plaintiff's children from her care and custody without probable cause, exigent circumstances or a pre-deprivation hearing;

(b)  Defendant Catoosa County, by and through the CCSD and the Catoosa County District Attorney's Office, state actors, seized and incarcerated Plaintiff without probable cause, exigent circumstances or a pre-deprivation hearing;

(c)  Defendant Catoosa County, through the CCSD and/or the CAC-LMJC, both of whom are state actors, performed an intrusive and intimate medical search of the minor A.H., Plaintiff's daughter, without probable cause, exigent circumstances or a pre-deprivation hearing;

(d) Defendant Catoosa County, by and through the CCSD and the Catoosa County District Attorney's Office, state actors, conspired to

subject the Plaintiff to illegal and unconstitutional procedures in the

Catoosa County Criminal Courts, including, but not limited to:

(i) the development of fabricated claims of child sexual abuse;

(ii) the coercion of the minor children A.H., R.L. and E.M. to

"remember" and then to "rehearse" the Defendants' version of

A.H., R.L. and E.M.'s statements in the Suzie Thorne, Stacy

Long, Tim Deal and Laurie Evans interviews;

(iii) the subornation of perjury from witnesses for the State;

(iv) the delivery of perjured testimony by witnesses for the State;

(v) the creation of false and fraudulent documentation to buttress

and support the states' specious case;

(vi) the intentional and deliberate refusal to seek and/or

investigate exculpatory evidence as to Plaintiff.

(e)    Based upon these statements, without any proper investigation,

and without taking into consideration the obvious parental coaching and

outside influences which were wholly independent from Plaintiff,

Defendant Catoosa County, Georgia, the CAC-LMJC, by and through

the Catoosa County Department of Family and Children's Services and

Defendant CCSD, as well as Defendants Tim Deal, Suzie Thorne and

Stacy Long, individually; deliberately, intentionally and with reckless disregard ignored the constitutional and civil rights of the Plaintiff by continuing to investigate and ultimate prosecute the Plaintiff. In addition, as a result of the intentional, deliberate and reckless acts of Defendant Catoosa County, Georgia, by and through the Catoosa County Department of Family and Children's Services and Defendant CCSD, as well as Defendants Tim Deal, Plaintiff's daughter was taken from Plaintiff's custody and care under threat of harm, which caused Plaintiff to acquiesce to the unreasonable demands of these Defendants

5.    The violations of the Plaintiff's rights to due process of law were not based upon exigent circumstances or imminent danger.

6.    The violations of the Plaintiff's rights to due process of law were not objectively reasonable.

7.    The violations of the Plaintiff's rights to due process of law were conducted with reckless disregard for the consequences in the life of the Plaintiff.

8.    The violations of the Plaintiff's rights to due process of law were motivated by animus and were unilateral attempts to influence the family relationships enjoyed by the Plaintiff.

9.    The violations of the Plaintiff's rights to due process of law were undertaken with gross disregard for the clearly established Constitutional rights of the Plaintiff.

10.    As a proximate result of the violations of the Plaintiff's rights to due process of law the Plaintiff was damaged.

11.    The damages to the Plaintiff including compensatory, general, exemplary and punitive damages are as set forth below and as will be shown by the evidence at trial.

C.    **SUBSTANTIVE DUE PROCESS VIOLATIONS**

**Fourteenth Amendment Violations:**

1.    Plaintiff is a citizen of the United States.

2.    Plaintiff possesses due process rights guaranteed by the Fourteenth Amendment to the Constitution of the United States of America.

3.    Plaintiff possesses liberty rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States of America to be free from unwanted governmental intrusion into protected relationships without probable cause or exigent circumstances.

4.    Plaintiff's substantive due process rights were violated by the state actors and state agencies without probable cause, exigent circumstances or a

pre-deprivation hearing, to wit:

(a) Defendant Catoosa County, by and through the CCSD and the Catoosa County District Attorney's Office, state actors, seized and incarcerated the Plaintiff Tonya Renee Craft without probable cause, exigent circumstances or a demonstration of a compelling state interest;

(b) Defendant Catoosa County, through the CCSD and/or the CAC-LMJC, both of whom are state actors, performed an intrusive and intimate medical search of the minor A.H. without probable cause, exigent circumstances or a demonstration of a compelling state interest;

(c) None of the state actors or state agency intrusions into the life and relationships of the Plaintiff were narrowly tailored to cause the least harm;

d) The acts and omissions of these state actors were not based upon a compelling state interest, were not narrowly tailored to avoid harm to the Plaintiff and her immediate family and were instead an abuse.

5.    The acts and omissions of these state actors and state agencies were not based upon exigent circumstances.

6.    The acts and omissions of these state actors and state agencies were not objectively reasonable.

7.    The acts and omissions of these state actors and state agencies were conducted with reckless disregard for their consequences in the life of the Plaintiff.

8.    The acts and omissions of these state actors and state agencies were a unilateral attempt to influence the family relationships enjoyed by the Plaintiff.

9.    The acts and omissions of these state actors and state agencies were undertaken with gross disregard for clearly established constitutional rights of the Plaintiff.

10.    As a proximate result of the acts and omissions of the state actors and state agencies the Plaintiff was damaged.

11.    The damages to the Plaintiff including compensatory, general, exemplary and punitive damages are set forth below.

D.    **EQUAL PROTECTION OF LAW VIOLATIONS**

**Fourteenth Amendment Violations:**

1.    Plaintiff is a citizen of the United States.

2.    Plaintiffs possesses rights to equal protection of the law guaranteed by the Fourteenth Amendment to the Constitution of the United States of America.

3.    Plaintiffs possesses liberty rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States of America to be free from malicious, false and fraudulent prosecutions in criminal court.

4.    The Plaintiff was subjected to malicious, false and fraudulent prosecution of and concerning her family relations in the Catoosa County Superior Court, by Defendants Catoosa County, through the CCSD and the Catoosa County District Attorney's Office in connection with the criminal trial, putting in peril Tonya Renee Craft's liberty and her immediate relations with her immediate family.

5.    As described more particularly in Paragraph 142 above, the collaboration and conspiracy of state actors and private persons in the Catoosa County Superior Court included, but was not limited to:

(a)  the development of fabricated claims of child sexual abuse;

(b)  the coercion of the minor children A.H., R.L. and E.M. to "remember" and then to "rehearse" the Defendants' versions of A.H., R.L. and E.M.'s statements in the Suzie Thorne, Stacy Long, Tim Deal and Laurie Evans interviews;

(c)  the subornation of perjury from witnesses for the State;

(d)  the delivery of perjured testimony by witnesses for the State;

(e)  the creation of false and fraudulent documentation to buttress and support the State's specious case.

6.    These acts by these state actors and state agencies were intended to support a malicious prosecution in the criminal court.

7.    These acts by these state actors and state agencies were intended to deny and deprive the Plaintiff the equal protection of law.

8.    These acts by these state actors and state agencies were intended to subject the Plaintiff to a denial of her constitutional rights.

9.    The acts and omissions of these state actors and state agencies were not objectively reasonable.

10.   The acts and omissions of these state actors and state agencies were conducted with reckless disregard for their consequences in the life of the Plaintiff.

11.   The acts and omissions of these state actors and state agencies were a unilateral attempt to influence the family relationships enjoyed by the Plaintiff.

12.   The acts and omissions of these state actors and state agencies were undertaken with gross disregard for clearly established constitutional rights of the Plaintiff.

13.    As a proximate result of the acts and omissions of the state actors and state agencies the Plaintiff was damaged.

14.    The damages to the Plaintiff including compensatory, general, exemplary and punitive damages are set forth below.

162.    As a proximate result of these violations of Plaintiff's constitutional rights as enumerated above in Paragraph 157, Parts A through and including Part D, and as described in detail in Paragraph 142 above, the Plaintiff was damaged.

163.    As a result of such conduct, Plaintiff is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

**COUNT TWO**
**VIOLATION OF CIVIL RIGHTS   42 U.S.C. § 1983 *et seq*.**
**CONSPIRACY UNDER 42 U.S.C. § 1983**
**STATE ACTORS WITH PRIVATE PERSONS**

164.    Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 163 as if fully set forth herein.

165.    Defendants Suzie Thorne, Stacy Long, Phil Summers, Tim Deal and Laurie Evans, for all times relevant to this cause of action, were state actors within the meaning of 42 U.S.C. § 1983, *et seq*.

166.  Defendants CCSD, the GREENHOUSE, the CAC-LMJC and Catoosa County, Georgia, for all times relevant to this cause of action, were state actor / agencies within the meaning of 42 U.S.C. § 1983 *et seq*.

167.  Defendants Sandra Lamb, Sherri Wilson, DeWayne Wilson, Kelli McDonald, Sarah Henke and Joal Henke are private persons.

168.  These private actors by themselves and/or through their acts conspired and or agreed to a common objective with the state actors.

169.  Specifically, as detailed in Paragraphs 1 through 139 above, and as more particularly set out in Paragraph 142 above, the common objective for which the private actors conspired and or agreed with the state actors and/or their agencies was to influence the familial and parental relationships of the Plaintiff, and to subject her to a thoroughly illegal and unconstitutional process in the Catoosa County Superior Court.

170.  The private parties, each of them, acted in furtherance of the common objective of influencing the familial and parental relationships of the Plaintiff.

171.  As a proximate result of Defendants' agreement, conspiracy and overt acts and/or omissions, the Plaintiff was damaged.

172. As a result of such conduct, Plaintiff is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

### COUNT THREE

### 42 U.S.C. § 1983 *et seq.*
### "MONELL" LIABILITY FOR CATOOSA COUNTY
### PROSPECTIVE RELIEF FOR CAC-LMJC, GREENHOUSE AND CCSD

173. Plaintiff repeats all of her general allegations including all allegations in paragraphs 1 through and including 172 as if fully set forth herein.

174. Prior to the incidents described hereinabove, Defendants CCSD, Catoosa County, the GREENHOUSE and the CAC-LMJC were aware that they had failed to adequately train and supervise their employees to competently investigate allegations of child sexual abuse.

175. Prior to the incidents described above, Defendants CCSD, Catoosa County, the GREENHOUSE and the CAC-LMJC were aware that they had failed to adequately train and supervise their employees to competently interview children about whom allegations of sexual abuse had been made.

176. Prior to the incidents described above, Defendants CCSD, Catoosa County, the GREENHOUSE and the CAC-LMJC had learned of previous incidents involving Defendants Suzie Thorne, Stacy Long, Tim Deal and Laurie Evans,

and/or other employees, in which these Defendants allegedly violated the statutory and Constitutional rights of other citizens.

177. The allegations of the preceding paragraph are likely to have additional evidentiary support after a reasonable opportunity for further investigation and discovery.

178. These Defendant agencies took no action to discipline their employees for past unlawful behavior, to prevent the repetition of such behavior, or to take any action against or even adequately investigate the incidents similar to the ones described in this lawsuit.

179. These Defendant agencies tacitly authorized and continued to authorize such improper conduct by their Defendant employees, without which the Defendants' conduct as described in this complaint would not have occurred.

180. Defendants CCSD, Catoosa County, the GREENHOUSE and the CAC-LMJC were aware of a pattern of statutory and Constitutional violations of citizens' rights and were aware of the inadequate training and supervision of its employees.

181. It was obvious that failing to correct these patterns of statutory and Constitutional rights violations as well as violations of clearly established law, together with the inadequate training and supervision of employees, would lead

to further violations of citizens' legal and Constitutional rights.

182.  Defendants CCSD, Catoosa County, the GREENHOUSE and the CAC-LMJC were and continue to be deliberately indifferent to the risk that the inadequate training and supervision of their employees would very likely lead to violations of citizens' legal and Constitutional rights.

183.  Defendants CCSD, Catoosa County, the GREENHOUSE and the CAC-LMJC have adopted a policy, practice, or custom of permitting and tolerating Constitutional violations by their employees in the State of Georgia.

184.  Defendants CCSD, Catoosa County, the GREENHOUSE and the CAC-LMJC and/or their employees have provided and continue to provide false, negative and damaging information concerning the Plaintiff to the press, and continue to interfere with the Constitutional rights of the Plaintiff.

185.  As a proximate result of the unconstitutional policies, practices, or customs of these Defendants, the Plaintiff continues to suffer violations of her rights under the laws of the State of Georgia, the Constitution of the State of Georgia and the Fourteenth Amendment of the Constitution of the United States of America.

186.  As a result of such conduct, Plaintiff is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

## SUPPLEMENTAL STATE LAW CLAIMS

## COUNT FOUR
## ORDINARY OR "COMMON LAW" NEGLIGENCE

187. Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 188 as if fully set forth herein.

188. At the time of the incidents described hereinabove, Defendant Joal Henke owed a specific statutory duty not to alienate the affections of his children, including A.H., from Plaintiff, their mother.

189. Defendant Joal Henke breached that duty by providing negative information to A.H., as described above, in an effort to alienate her affections for Plaintiff and to cause her to provide false statements regarding Plaintiff.

190. Defendants Catoosa County, CCSD, and GREENHOUSE owed a duty to Plaintiff to exercise ordinary in their handling of the interviews and medical examinations of A.H., Plaintiff's daughter.

191. These Defendants breached this duty by subjecting A.H to unnecessary and intrusive medical examinations and by subjecting her to unnecessary interviews at the GREENHOUSE which were intimidating, manipulative and suggestive.

191. Defendants Catoosa County and CCSD owed a duty to Plaintiff to exercise

ordinary care in investigating these allegations against Plaintiff.

192. Even if such duty did not originally exist, such duty arose when these Defendants undertook to conduct an investigation into allegations against Plaintiff.

193. Defendants CCSD and Catoosa County breached this duty by failing to properly investigate these allegations, by manipulating and modifying the testimony of witnesses, by creating false evidence during the trial of this case and by ignoring exculpatory evidence which tended to indicate Plaintiff did not commit the offenses as alleged.

194. Defendants Sandra Lamb, Sherri Wilson, Joal Henke, Suzie Thorne, Tim Deal, Sarah Henke, Kelli McDonald and Laurie Evans owed a duty to Plaintiff not to intentionally provide false testimony under oath during the criminal trial in which each of these Defendants were called as witnesses for the prosecution.

195. These Defendants breached that duty by providing false testimony under oath during this trial.

196. At the time each of these Defendants interacted with the Plaintiff, it was reasonably foreseeable that a lack of ordinary care on the part of these Defendants could and would damage the Plaintiff and/or her relationships.

197. As a result of the foreseeability of damage to the Plaintiff and/or her

relationships which could result from a lack of ordinary care, these Defendants owed a duty to the Plaintiff to use ordinary and reasonable care.

198. These Defendants did not use ordinary and reasonable care in their interactions with the Plaintiff, or with the each other.

199. The lack of ordinary and reasonable care constituted a breach of the duty these Defendants owed to this Plaintiff.

200. As a proximate result of the breach of the duty to use ordinary and reasonable care by these Defendants named in this Count, the Plaintiff was damaged.

201. As a result of such conduct, Plaintiff is entitled to recover of Defendants Catoosa County, CCSD, Sandra Lamb, Sherri Wilson, Joal Henke, Suzie Thorne, Tim Deal, Sarah Henke, Kelli McDonald and Laurie Evans, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

## COUNT FIVE

## GROSS NEGLIGENCE

202. Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 201 as if fully set forth herein.

202. Each of the Defendants named herein owed clearly cognizable legal duties to

the Plaintiff to avoid engaging in intentional acts designed to falsely convict Plaintiff of a crime which she did not commit and which these Defendants knew she did not commit.

203. The Defendants, each of them, acted with conduct to the Plaintiff which was callously indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

204. The callously indifferent, reckless and grossly negligent conduct of each of these Defendants as to the Plaintiff, includes, without limitation, the following:

    (a)    Manipulation and development of fabricated claims of sexual abuse;

    (b)    Refusal to subject the false claims of sexual abuse to alternative hypotheses for investigation;

    (c)    Statements, both oral and written of a defamatory nature describing Plaintiff Tonya Renee Craft as a criminal, a sexual pervert and/or a sexual abuse perpetrator;

    (d)    Development of a program of indoctrination of the minor children A.H., R.L. and E.M. into the role of sex abuse victims despite significant evidence that sex abuse never happened;

    (e)    Providing false, misleading, negative and damaging information

59

to the Catoosa County District Attorney's Office;

(f)    Constant emotional pressure akin to torture upon the minor children A.H., R.L. and E.M. under the guise of "therapy" to coerce them to "remember" – adopt and rehearse Defendants' version of A.H.'s, R.L's and E.M.'s statements in the Suzie Thorne, Stacy Long, Tim Deal and Laurie Evans interviews;

(g)    Consistent efforts to "spin" everything the minor children or Plaintiff said and did, in order to support their false idea that Plaintiff Tonya Renee Craft had perpetrated some kind of physical and sexual abuse upon the minor children A.H., R.L. and E.M.;

(h)    Continued false reporting on State of Georgia databases and national databases (some of which are available to public scrutiny) of and concerning the Plaintiff; and

(i)    Maliciously making false and defamatory statements regarding Plaintiff to third parties.

205.    As a proximate result of the Defendants' conduct, which was callously indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury resulted, the Plaintiff was damaged.

206.    As a result of such conduct, Plaintiff is entitled to recover of Defendants,

jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

## COUNT SIX

## DEFAMATION *PER SE*

207.  Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 206 as if fully set forth herein.

208.  In May 2010, during the pendency and following the conclusion of the criminal proceedings in the State of Georgia, Defendants Sandra Lamb and Phil Summers published in writing and by speech various documents, reports, statements and pleadings making false and defamatory statements of and concerning Plaintiff, as detailed above.

209.  The false and defamatory statements published by speech and in writing, by Defendants Lamb and Summers included but were not limited to statements which directly and by innuendo expressed that Plaintiff Tonya Renee Craft was a criminal and had engaged in acts of child molestation

210.  At the time they published by speech and in writing the false and defamatory statements of and concerning Plaintiff, some of which are described above, Defendants knew or should have known that the statements were false.

211.  The false and defamatory statements which Defendants published by speech and in writing attributed sexual perversion to the Plaintiff.

212.  The false and defamatory statements which Defendants published by speech and in writing described the Plaintiff as a criminal.

213.  These statements were lacking in reasonable basis in fact and were false.

214.  These statements were defamatory.

215.  These statements were published to third parties.

216.  These statements were made maliciously.

217.  Based upon the nature of these statements, they represent slander *per se* under Georgia law.

218.  As a proximate result of Defendants Lamb and Summers' publication by speech and in writing of these false and defamatory remarks, Plaintiff was damaged.

219.  As a result of such conduct, Plaintiff is entitled to recover of Defendants Lamb and Summers, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

## COUNT SEVEN

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

220.  Plaintiff incorporates by reference all of her general allegations including all

allegations in paragraphs 1 through and including 221 as if fully set forth herein.

222.  As described in Paragraph 142 above, each of the Defendants acted as to the Plaintiff with conduct a reasonable person would describe as extreme and outrageous.

223.  The extreme and outrageous conduct of Defendants was engaged in with callous indifference and/or recklessly and/or without regard to whether it might cause injury to the Plaintiff and/or her relationships with her family.

224.  The extreme and outrageous conduct of Defendants was designed to subvert the parental and familial relationships between the Plaintiff and her family.

225.  The extreme and outrageous conduct of Defendants is illustrated by, but not limited to the examples set forth throughout this pleading.

226.  As a proximate result of the Defendants' extreme and outrageous conduct, the Plaintiff was damaged.

227.  As a result of such conduct, Plaintiff is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

## COUNT EIGHT

## INVASION OF PRIVACY

228. Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 227 as if fully set forth herein.

229. Plaintiff, her children, her parents and her husband are members of a close-knit family.

230. Plaintiff has a right to privacy guaranteed by the First and Fourteenth Amendments to the Constitution of the United States of America.

231. In May of 2008, with no reasonable or probable cause, with no competent evidence of any crime, with no exigent circumstances and with no imminent danger to any member of the Plaintiff's immediate family, the Defendants herein, used their power and that of the State of Georgia to intrude upon and invade the protected privacy interests of the Plaintiff and her immediate family.

232. The Defendants herein agreed and conspired to manipulate the youngest member of Plaintiff's immediate family, AH, into the role of sex abuse victim, and then neglecting to inform any subsequent judicial officer of the months and months of such manipulation.

233. The Defendants herein conspired to create false and fraudulent "evidence" of

sexual abuse and then hid their efforts in this regard.

234. All of the acts of the Defendants described in this pleading were aimed at the invasion into privacy protected familial relations and toward the destruction of those relationships.

235. All such acts of the Defendants described in this pleading were further aimed at portraying Plaintiff in a false light to the public.

236. As a proximate result of the Defendants' extreme and outrageous conduct and their intrusion and invasion of the Plaintiff's privacy, the Plaintiff was damaged.

237. As a result of such conduct, Plaintiff is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

## COUNT NINE

## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

238. Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 237 as if fully set forth herein.

239. Defendants Suzie Thorne, Stacy Long, Phil Summers, Tim Deal and Laurie Evans, the CCSD, the GREENHOUSE, the CAC-LMJC, and Catoosa County,

for all times relevant to this cause of action, were state actors within the meaning of 42 U.S.C. § 1983 *et seq*.

240.  Defendants Sandra Lamb, Sherri Wilson, DeWayne Wilson, Sarah Henke, Kelli McDonald and Joal Henke are private persons.

241.  These private actors by themselves and/or through their acts within their agencies conspired and or agreed to a common objective with the state actors: to cause Plaintiff Tonya Renee Craft to be prosecuted with false charges of child molestation, aggravated child molestation and aggravated sexual battery.

242.  The Defendants, each of them, jointly and severally, acted in furtherance of the common objective of framing and causing Plaintiff Tonya Renee Craft to be prosecuted with false charges of child molestation, aggravated child molestation and aggravated sexual battery.

243.  These Defendants, each of them, induced or caused the criminal proceedings to be initiated against Plaintiff Tonya Renee Craft. These criminal proceedings had no probable cause and were initiated out of sheer malice on these Defendants' part.

244.  These Defendants, each of them, induced or caused the criminal proceedings to be initiated against Plaintiff for the purpose of denying her of her Constitutional rights including but not limited to rights protected under the Equal Protection

clause and the rights protected under the Fourth Amendment.

245. These Defendants, each of them, induced or caused the criminal proceedings to be initiated against Plaintiff through fraud, corruption, perjury, fabricated evidence and/or other wrongful conduct undertaken in bad faith.

246. The criminal proceedings terminated in Plaintiff Tonya Renee Craft's favor.

247. As a proximate result of Defendants' agreement, conspiracy and overt acts, the Plaintiff was damaged.

248. As a result of such conduct, Plaintiff is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow

## COUNT TEN

## MALICIOUS PROSECUTION/FALSE ARREST UNDER GEORGIA STATE LAW

249. Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 249 as if fully set forth herein.

250. The Defendants, each of them, acted in furtherance of the common objective of framing Plaintiff with false charges of sexual battery, child molestation, aggravated child molestation and/or aggravated sexual battery.

255.   As a result of the Defendants' actions, including without limitation, the creation of false evidence against Defendant through the use of manipulative, suggestive and repeated questioning of the children, the Plaintiff was arrested on charges she did not commit.

256.   These Defendants, each of them, further caused the criminal proceedings to be initiated against Plaintiff in connection with charges Plaintiff did not commit.

257.   These criminal proceedings had no reasonable basis, were not supported by probable cause and were initiated out of sheer malice on these Defendants' part.

258.    Among other things, these Defendants used false statements to cause the initiation of these criminal proceedings and/or to cause the furtherance of such proceedings.

259.   The criminal proceedings terminated in Plaintiff's favor, through a unanimous jury verdict of 'not guilty' on all counts.

260.   As a proximate result of Defendants' agreement, conspiracy and/or overt acts or omissions, the Plaintiff was damaged.

261.   As a result of such conduct, Plaintiff is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set forth hereinbelow.

## <u>DAMAGES</u>

262.   Plaintiff incorporates by reference all of her general allegations including all allegations in paragraphs 1 through and including 261 as if fully set forth herein.

263.   Plaintiff suffered damages which were proximately caused by the conduct of the Defendants, jointly and severally, which included, without limitation, the following:

      (a)   humiliation;

      (b)   outrage;

      (c)   indignity;

      (d)   conscious pain and suffering;

      (e)   loss of custody, society and companionship of her family members;

      (f)   mental suffering and sorrow;

      (g)   headaches and the physical sequella of emotional stress;

      (h)   grief, anger, horror, fright;

      (i)   the stress and costs of legal fees and scores of court appearances;

      (j)   outright distrust of law and judicial officials;

      (k)   and all other damages fair and equitable under the circumstances.

264.    Plaintiff claims that the acts of these Defendants and the damages to Plaintiff

proximately flowing from those acts entitle her to *exemplary damages*, because

the acts of the Defendants:

      (a)    Caused injuries to Plaintiff's feelings not capable of precise

           computation;

      (b)    Caused Plaintiff intensified injury due to the Defendants' acts of

           bad faith or ill will;

      (c)    Caused Plaintiff intensified injury due to the willful and wanton

           nature of the Defendants' acts;

      (d)    Caused Plaintiff intensified injury due to the sheer

           reprehensibility of the Defendants' conduct;

      (e)    Caused Plaintiff intensified injury attributable to Plaintiffs

           indignation and outrage;

      (f)    Demonstrated on the part of each of these Defendants a conscious

           indifference to the consequences of their actions.

265.    Plaintiff claims that the acts of the Defendants and the damages to Plaintiff

proximately flowing from those acts entitle her to *punitive damages* pursuant to

42 U.S.C.§ 1983 *et. seq.*

## DEMAND FOR TRIAL BY JURY

The Plaintiff demands that her case be tried before a jury of her peers

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands as follows:

(a) With respect to all Defendants, the Plaintiff requests that the trier of fact award her TWENTY-FIVE MILLION DOLLARS, jointly and severally from each of these Defendants, in the form of:

> 1) Compensatory, economic damages;
>
> 2) Damages for emotional distress;
>
> 3) Exemplary damages;
>
> 4) Punitive damages;
>
> 5) Attorneys fees and costs under 42 U.S.C. § 1988; and
>
> 6) Such other relief as is just and equitable under the
>
>    circumstances.

(b) With respect to Defendants CAC-LMJC, the GREENHOUSE and the CCSD, the Plaintiff requests that this Court order them to comply with federal law and:

> 1) Remove Plaintiff Tonya Renee Craft from the records of any
>
>    Georgia site or list of child abusers;
>
> 2) Establish a protocol to competently investigate claims of

sexual abuse which includes corroborating information and/or competent forensic evaluation;

3) Establish a protocol to competently conduct investigatory interviews of children concerning possible sexual abuse which specifically requires video taped interviews and avoids adult interviewer sexualization of the interview, use of leading questions, multiply repeated questions, disconfirmation, and anatomically detailed dolls;

4) Competently train and supervise their employees to enable them to effectively investigate claims of sexual abuse and interview children that have alleged sexual abuse in keeping with the established protocol.

(c)    that this Court award Plaintiff such other and further relief as is just and equitable.

Respectfully submitted this 20th day of July, 2010.


_/s/_____

Scott R. King
Georgia Bar No. 421345
Cary S. King
Georgia Bar No. 419810
Attorneys for Plaintiff

JACOBS, KING & WALLACK
1117 Perimeter Center West, Suite W501
Atlanta, Georgia 30338
(404) 920-4490
scott@jkwlawfirm.com
cary@jkwlawfirm.com