IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TONYA RENEE CRAFT,

     Plaintiff,

v.

SANDRA LAMB, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 4:10-CV-0068-HLM

## ORDER

This case is before the Court on the Motion for More

Definite Statement filed by Defendants The Greenhouse

Children's Advocacy Center ("Defendant Greenhouse") and

Thorne [77], the Motion to Dismiss filed by Defendants

Children's Advocacy Center of the Lookout Mountain

Judicial Circuit, Inc. ("Defendant CAC") and Evans [83], the

Motions to Dismiss filed by Defendants Sarah and Joal

Henke [84] [85], the Motion to Dismiss and Motion to Strike

AO 72A

filed by Defendants DeWayne Wilson and Sheri Wilson [86], the Motion to Dismiss and Motion to Strike filed by Defendant Lamb [87], the Second Motion for More Definite Statement and Motion to Dismiss filed by Defendants Catoosa County, Georgia, Deal, Summers, and the Catoosa County Sheriff's Department ("Defendant CCSD") [91], the Motion to Dismiss filed by Defendant Long [94], and the Motion to Strike Amended Complaint, or, in the Alternative, Motion to Dismiss Amended Complaint filed by Defendant McDonald [114].

AO 72A

# I.   Background

## A.   Plaintiff's Allegations

### 1.   The Parties

Plaintiff resides in Soddy Daisy, Tennessee.   (Am. Compl. ¶ 3.) Defendant Lamb resides in Ringgold, Georgia. (Id. ¶ 4.)  Defendants Sheri and DeWayne Wilson reside in Rossville, Georgia.   (Id. ¶¶ 5-6.)   Defendants Joal and Sarah Henke reside in Ooltewah, Tennessee. (Id. ¶¶ 7-8.) Defendant Kelli McDonald resides in Chickamauga, Georgia.  (Id. ¶ 9.)

Defendant Deal is an employee of Defendant CCSD. (Am. Compl. ¶ 10.)   Defendant Catoosa County is a municipal and governmental agency of the State of Georgia. (Id. ¶ 11.)   Defendant CCSD is a division of Defendant

AO 72A

Catoosa County.  (Id. ¶ 12.)  Defendant Phil Summers is an employee of Defendant CCSD.  (Id. ¶ 13.)

Defendant Thorne was an employee with Defendant Greenhouse, which is an agency that contracted with law enforcement authorities in Catoosa County and that performed certain functions related to an action being investigated by Defendant Catoosa County.  (Am. Compl. ¶¶ 14, 17-18.)   Defendant Long was an employee of Defendant CAC.  (Id. ¶ 15.)   Defendant Evans was an employee of Defendant CAC.  (Id. ¶ 16.)

Defendant CAC was a state contracting agency doing business in Catoosa County, Georgia, while Defendant Greenhouse was a state contracting agency doing business in Whitfield County, Georgia.   (Am. Compl. ¶¶ 17-18.)

4

AO 72A

Defendant Greenhouse performed certain functions relating to an action being investigated by Defendant Catoosa County.  (<u>Id.</u> ¶ 18.)

### 2.   Factual Allegations

Plaintiff has two minor children, A.H. and K.H.  (Am. Compl. ¶ 20.)   Plaintiff alleges that, on May 19, 2008, Defendant Lamb reported in a telephone call to a Georgia Department of Children and Family Services ("DCFS") worker that her minor daughter, R.L., had been involved in child-on-child sexual touching with A.H.  (<u>Id.</u> ¶ 21.)  A.H. is two years younger than R.L.  (<u>Id.</u>)  According to Plaintiff, "[d]espite repeated and suggestive questioning in which Plaintiff was continually mentioned by Defendant Sandra Lamb by name," Plaintiff was not implicated.  (<u>Id.</u> ¶ 22.)

5

AO 72A

Plaintiff contends that Defendant Lamb "attempted to manipulate R.L.'s statements in order to implicate Plaintiff in criminal activity." (Id. ¶ 23.)

According to Plaintiff, on May 23, 2008, during a last day of school party at her home, Defendant Sheri Wilson noticed that K.W., a minor, used sidewalk chalk to write "sex and kissing xoxoxo." (Am. Compl. ¶ 24.) Defendant Sheri Wilson called K.W.'s parents, who came to the home and had a discussion with Defendants Sheri and DeWayne Wilson, during which no child raised allegations against Plaintiff, but Defendants Sheri and DeWayne Wilson "ranted about Plaintiff concerning other matters and suggested that she was the perpetrator behind the children['s] allegations." (Id. ¶ 25.) Plaintiff alleges that Defendants Sheri and

6

DeWayne Wilson "made numerous false and derogatory comments about Plaintiff," including: (1) mentioning their anger toward Plaintiff based on Plaintiff's desire to hold back their child from promotion to first grade when Plaintiff was their child's teacher; (2) mentioning that, during a parent-teacher conference in the spring of 2008, Defendants DeWayne and Sheri Wilson became so upset with Plaintiff that they threatened her by saying, "someone will pay for this," directed at Plaintiff; (3) making further derogatory comments to K.W.'s parents concerning Plaintiff's actions at the Walker County Gala, where Plaintiff was a guest of the Wilson Defendants; (4) making further repeated derogatory comments about Plaintiff, including statements indicating that Plaintiff drank excessively and

7

was inappropriately promiscuous; and (5) using several expletives to describe Plaintiff.  (<u>Id.</u> ¶ 26.)  K.W.'s parents left the Wilson residence and later questioned K.W. about the incident.  (<u>Id.</u> ¶ 27.)

Plaintiff alleges that, for the next three days, Defendant Lamb began "repeatedly and suggestively questioning" her daughter, R.L., including asking questions that directly implicated Plaintiff, even though Defendant Lamb has no training or experience in questioning children about alleged sexual abuse.  (Am. Compl. ¶ 28.)  After hours  or days of such questioning, R.L. allegedly made a statement concerning inappropriate touching.  (<u>Id.</u> ¶ 29.)

Plaintiff alleges that, after the discussion between the Defendants Sheri and DeWayne Wilson and K.W.'s parents,

8

Defendants Sheri and DeWayne Wilson had discussions with Defendant Lamb and Defendant Joal Henke about those allegations.   (First Am. Compl. ¶ 30a).)   Plaintiff alleges that, in the middle of those discussions, Defendant DeWayne Wilson, who formerly served as the coroner for Walker County, Georgia, initiated Defendant CCSD's involvement in this case by contacting his close personal friend, Detective Steven Keith, who was an employee of Defendant CCSD.   (Id. ¶ 30(b).)   Plaintiff alleges that Detective Keith had only investigated sex crimes involving children for two to three months, and had little training in that area.   (Id.)   According to Plaintiff, during that conversation, Defendant DeWayne Wilson reported that Plaintiff allegedly engaged in inappropriate touching of

9

children, even though he had no actual knowledge of such conduct and lacked a good faith basis to believe that such conduct had occurred.  (Id. ¶¶ 30(c)-(d).)

Plaintiff alleges that Defendant Lamb contacted Detective Keith and arranged a first interview of R.L. with Defendant CAC.  (Am. Compl. ¶ 31(a).)  Plaintiff contends that, when Detective Keith arranged that interview, he had no evidence indicating that Plaintiff had engaged in any illegal conduct.  (Id. ¶ 31(b).)

On May 27, 2008, Defendant Long interviewed R.L. at Defendant CAC.  (Am. Compl. ¶ 32.)  According to Plaintiff, "[u]nder repeated and suggestive questioning by Defendant Long," R.L. told Defendant Long about child-on-child touching with A.H, but made no allegations to support the

10

charges eventually brought against Plaintiff. (Id. ¶ 33.) R.L. stated that Plaintiff kissed her on the head, neck, and shoulder, and would pat her. (Id. ¶ 34.) When asked about the child-on-child touching, R.L. stated that she knew about the touching because her mother told her. (Id. ¶ 35.)

On May 27, 2008, Defendant Long interviewed R.L. a second time at Defendant CAC. (Am. Compl. ¶ 36.) R.L. spent the interval between the two interviews primarily with Defendant Lamb. (Id. ¶ 37.) Plaintiff alleges that, "[u]nder repeated and suggestive questioning," R.L. told Defendant Long that Plaintiff made her touch Plaintiff's back, signaling her neck and chest, and stated that Plaintiff told her that she had to do it or she had to go home. (Id. ¶ 38.) Plaintiff asserts that, throughout those two interviews, Defendant

11

Long attempted repeatedly to modify R.L.'s answers, in an effort to have R.L. implicate Plaintiff in criminal activity.  (Id. ¶ 39.)

Plaintiff asserts that, during telephone calls between Defendant Sheri Wilson, Defendant Lamb, and Defendant Joal Henke, those Defendants conspired to claim falsely that E.M. also was an alleged victim of inappropriate touching by Plaintiff. (Am. Compl. ¶ 40.) In conjunction with that plan, those Defendants notified Defendant CCSD or Defendant Deal about an incident in 2006 that involved child-on-child contact between E.M. and A.H.  (Id. ¶ 41.)

On May 29, 2008, Defendant Deal interviewed E.M. at Defendant CAC.  (Am. Compl. ¶ 42.)  Plaintiff asserts that, before that interview, Defendant McDonald, E.M.'s mother,

12

spoke with Defendant Lamb or Defendant Sheri Wilson concerning the plan to raise false allegations against Plaintiff. (Id. ¶ 43.) Plaintiff alleges that, as a result of that conversation, while on the way to this interview, Defendant McDonald directly asked E.M. "certain suggestive questions," leading E.M. to indicate falsely "that Plaintiff had touched her inappropriately." (Id. ¶ 44.) According to Plaintiff, before Defendant McDonald questioned E.M. about those allegations, E.M. had made no allegations against Plaintiff. (Id. ¶ 45.) Plaintiff alleges that Defendant McDonald asked E.M. directly if Plaintiff "had 'touched her on her privates' or otherwise hurt her," or threatened to kill her or otherwise hurt her, and that E.M. had never raised

those issues before Defendant McDonald's questioning. (<u>Id.</u> ¶¶ 46-47.)

On May 29, 2008, in her interview with Defendant Deal, E.M. stated, "'My momma told me which is which and where they touched me.'" (Am. Compl. ¶ 48.) According to Plaintiff, "under repeated and suggestive questioning," E.M. told Defendant Deal about child-on-child touching with A.H. and stated that Plaintiff touched her on top of her clothes. (<u>Id.</u> ¶ 49.) Plaintiff contends that, throughout the interview, Defendant Deal repeatedly attempted to modify E.M.'s answers, in an effort to get E.M. to implicate Plaintiff in criminal activity. (<u>Id.</u> ¶ 50.)

Plaintiff alleges that, on May 30, 2008, Defendant Catoosa County, through the Catoosa County Department

AO 72A

of Family and Children's Services, and Defendant CCSD, forced Plaintiff to agree to having her minor children removed from her residence and placed with their father, Defendant Joal Henke. (Am. Compl. ¶ 51.) Plaintiff asserts that Defendants Catoosa County and CCSD sent armed police officers, including Defendant Deal, to Plaintiff's property to wait, while a DCFS representative informed Plaintiff that she could agree to the removal or the children would be taken into custody of the county authorities. (Id. ¶ 52.) Plaintiff asserts that those actions occurred at the direction of, or with the consent of, Defendant Summers. (Id. ¶ 53.) According to Plaintiff, at that time, Defendants Catoosa County and CCSD had no evidence indicating that Plaintiff committed any crimes. (Id. ¶ 54.)

15

Plaintiff asserts that, afterward, Defendant Joal Henke received numerous and repeated telephone calls from Defendant Sheri Wilson and Defendant Lamb, in which those Defendants accused Plaintiff of inappropriately touching minor children.  (Am. Compl. ¶ 55.)   Plaintiff alleges that, after receiving those calls, Defendant Joal Henke repeatedly and suggestively questioned A.H., using questions based on the calls.  (Id. ¶ 56.)  Plaintiff further contends that, during that questioning, Defendant Joal Henke suggested that Plaintiff had inappropriately touched A.H., even though A.H. maintained that Plaintiff had touched her only when applying medication to her or bathing her.  (Id. ¶ 57.)  Plaintiff contends that Defendant Henke continued to manipulate A.H. to get her to implicate

16

Plaintiff in wrongdoing, by making statements such as: (1) Plaintiff had lied to the police; (2) Plaintiff had lied for a lot of people; (3) Plaintiff had engaged in wrongdoing; and (4) Plaintiff would be sent to jail. (<u>Id.</u> ¶¶ 58-59.) Plaintiff also alleges that Defendant Sarah Henke participated in Defendant Joal Henke's efforts to manipulate A.H. by informing A.H. that Plaintiff had lied and had engaged in other wrongful conduct. (<u>Id.</u> ¶ 60.) Plaintiff contends that those actions by the Henke Defendants were intentionally designed to alienate A.H.'s affections for Plaintiff and to manipulate A.H. into making false allegations against Plaintiff. (<u>Id.</u> ¶ 61.)

Plaintiff asserts that, before any allegations arose, Defendant Sarah Henke had showered with A.H. and had

"shaved her genital area in front of A.H. while A.H. was in the shower with her."  (First Am. Compl. ¶ 62.)  Plaintiff alleges that those actions "were psychologically devastating to A.H."  (Id. ¶ 63.)

On June 3, 2008, Defendant Thorne interviewed A.H. at Defendant Greenhouse.  (Am. Compl. ¶ 64.)  Defendant Thorne and Defendant Greenhouse conducted the interview at the request of Defendants Catoosa County, CCSD, or Deal, or at the request of the Catoosa County District Attorney's Office (the "District Attorney's Office").  (Id. ¶ 65.) According to Plaintiff, under "repeated and suggestive" questioning by Defendant Thorne, A.H. stated that "her mother had put medicine on her because she had belly aches and diarrhea," which her father, Defendant Joal

18

Henke, attributed to allergies.  (Id. ¶ 66.)  A.H. also stated that Plaintiff touched her vaginal area while applying that medicine.  (Id. ¶ 67.)  Other than stating that Plaintiff had applied medicine, A.H. made no disclosures about Plaintiff. (Id. ¶ 68.)

During the June 3, 2008, interview, A.H. told Defendant Thorne that "her father told her that her mother had lied to the police and lied about a lot of people, although A.H. could not remember what her father claimed Plaintiff had lied about."  (Am. Compl. ¶ 70.)  Plaintiff asserts that, throughout the June 3, 2008, interview, Defendant Thorne repeatedly attempted to modify A.H.'s answers, in an attempt to have A.H. improperly implicate Plaintiff in criminal activity.  (Id. ¶ 71.)

19

AO 72A

On June 4, 2008, Defendant Thorne conducted a third interview of R.L. at Defendant Greenhouse.  (Am. Compl. ¶ 71.)  R.L. primarily spent the interval between the second and third interviews with her mother, Defendant Lamb. (Id. ¶ 72.)  Plaintiff contends that, during this interval, the telephone calls and discussions between Defendants Sheri Wilson, Lamb, McDonald, and Joal Henke continued.  (Id. ¶ 73.)

Plaintiff alleges that "[u]nder repeated and suggestive questioning, R.L. told Defendant Suzie Thorne that she remembered that Plaintiff would touch her in her vaginal area with R.L.'s clothes on."  (Am. Compl. ¶ 73.)  After being asked sixteen times "if there was 'anything else,'" R.L. "produced a number of fantasy stories involving non-sexual

20

related incidents." (Id. ¶ 74.)  Plaintiff alleges that,

throughout the interview, R.L. stuck to her story that Plaintiff

only allegedly touched her in the vaginal area "with clothes

. . . on." (Id. ¶ 75.)  Plaintiff asserts that, throughout this

interview, Defendant Thorne repeatedly attempted to modify

R.L.'s answers, in an attempt to have R.L. implicate Plaintiff

in criminal activity.  (Id. ¶ 76.)

On June 11, 2008, Defendant Deal interviewed E.M. for

a second time at Defendant CAC.  (Am. Compl. ¶ 77.) E.M.

spent the interval between the first and second interviews in

the care and custody of Defendant McDonald, and the

telephone calls and discussions among Defendants Sheri

Wilson, Lamb, McDonald, and Joal Henke continued. (Id.)

According to Plaintiff, "[u]nder repeated and suggestive

21

questioning," E.M. stated that "she could not remember what she had said thirteen days before," but that she remembered that Plaintiff had touched her inside her panties. (Am. Compl. ¶ 79.) E.M. also stated that her mother told her that if she did a good job, she would get a toy. (Id. ¶ 80.) Plaintiff asserts that, on several occasions during his two interviews with E.M., Defendant Deal manipulated E.M. into giving different responses to the questions that he originally had asked, and that these modifications were designed to manipulate E.M. into providing information that implicated Plaintiff in a crime. (Id. ¶¶ 82-83.)

According to Plaintiff, before that interview, and after numerous calls with Defendant Sheri Wilson and Defendant

22

Lamb, Defendant McDonald "intuited that E.M. had failed to disclose all of the negative things she had to say about Plaintiff." (Am. Compl. ¶ 84.) Plaintiff asserts that Defendant McDonald therefore repeatedly and suggestively questioned E.M. until E.M. made more negative allegations against Plaintiff. (Id. ¶ 85.) Plaintiff alleges that this questioning was intentionally designed to make E.M. change her story and provide statements that implicated Plaintiff in a crime. (Id. ¶ 86.)

Plaintiff alleges that, shortly after Defendant DeWayne Wilson initiated Defendant CCSD's investigation of Plaintiff, Defendant Deal was assigned to serve as the lead investigator on the case. (Am. Compl. ¶ 87.) Plaintiff asserts that Detective Keith also participated in the

investigation, even though he had personal friendships with one or more of the parents who alleged that Plaintiff engaged in inappropriate behavior. (Id. ¶ 88.) Plaintiff contends that, throughout the course of the investigation, Defendant Deal and other members of Defendant CCSD working on the investigation refused to interview witnesses who indicated that they had information that would tend to show that Plaintiff did not commit the acts alleged, and also failed and refused to interview other teachers, students, and parents who regularly observed Plaintiff's interaction with A.H., R.L., or E.M. and who could have disputed the allegations against Plaintiff. (Id. ¶¶ 89-90.) Plaintiff contends that Defendant Deal and the other members of Defendant CCSD who worked on the investigation

24

repeatedly ignored evidence and statements tending to show that Plaintiff did not commit the alleged acts. (Id. ¶ 91.) Plaintiff asserts that Defendant Deal and Defendant CCSD's members who worked on the investigation took all of those actions intentionally, in an effort to ensure Plaintiff's conviction. (Id. ¶ 92.) Plaintiff further alleges that, at all times throughout the investigation, Defendant Deal and the members of Defendant CCSD who worked on the investigation were employees of Defendant CCSD, a division of Defendant Catoosa County, and acted under the direction of, and supervision of, Defendant Summers. (Id. ¶ 93.)

According to Plaintiff, in or around spring 2008, Defendant CAC hired Defendant Evans, "a social worker

25

with a documented history of serious mental illness," to provide therapy for children alleged to be victims of abuse. (Am. Compl. ¶ 94.)  Plaintiff asserts that, from June 2008 through December 2008, A.H., R.L., and E.M. attended therapy with Defendant Evans at Defendant CAC.  (Id. ¶ 95.) A.H. stopped attending sessions with Defendant Evans in December 2008, after a court determined that Defendant Evans should have no further contact with A.H.  (Id. ¶ 96.) R.L. and E.M., however, continued therapy with Defendant Evans until at least April 2010.  (Id. ¶ 97.)

Plaintiff alleges that, at the onset of therapy, without exercising critical judgment, Defendant Evans assumed that the allegations of sexual abuse as described by Defendants Thorne, Long, Deal, and CAC were true.  (Am. Compl. ¶

26

98.)  Plaintiff alleges that Defendant Evans did not think it was appropriate to question the "manipulative interviewing techniques" used by Defendants Thorne, Long, or Deal, or the consequences.  (Id. ¶ 99.)   Plaintiff contends that Defendant Evans, throughout the course of therapy, continued to manipulate A.H., R.L., and E.M. to make them assert falsely that Plaintiff had touched them inappropriately.  (Id. ¶ 100.)   According to Plaintiff, Defendant Evans acted as an employee of Defendant CAC during the therapy.  (Id. ¶ 100.)   Plaintiff alleges that Defendant Evans simply assumed that Plaintiff had sexually molested A.H., R.L., and E.M., even though no such molestation occurred.  (Id. ¶¶ 101-101.[1])  Plaintiff alleges

---

[1]The Amended Complaint contains two paragraphs numbered 101.

that Defendant Evans ignored the "coercive and manipulative nature" of the interviews, the lack of corroborating physical evidence, denials by eyewitnesses, and peer-reviewed scientific literature in the area of child sexual abuse, and carried on a course of therapy that was negligent, grossly negligent, and manipulative, or that was intentionally designed to manipulate or harm the children. (Id. ¶ 102.) Plaintiff alleges that Defendant Evans manipulated the children by using coercive interrogations, and wrote reports to Defendant CAC that were designed to deny Plaintiff access to her children. (Id. ¶ 703.)

Plaintiff alleges that Defendants Evans, Long, Deal, and other members of the treatment team, "[i]n their efforts to conspire and perfect their fabricated and fraudulent

28

criminal charges against Plaintiff and to interfere with the parental and familial relationships of the Plaintiff," regularly met for case conferences at Defendant CAC, beginning soon after the children began therapy and continuing until April 2010. (Am. Compl. ¶¶ 104-05.) Plaintiff alleges that Defendants Joal Henke, Sarah Henke, Lamb, Sheri Wilson, DeWayne Wilson, and McDonald manipulated or coerced A.H., R.L., and E.M. to claim falsely that Plaintiff had touched them improperly. (Id. ¶ 106.) Plaintiff further asserts that, in an effort to perfect the charges against Plaintiff, Defendants Thorne, Long, Evans, and Deal manipulated A.H., R.L., and E.M. in therapy and in interviews and meetings with personnel from Defendant CAC, Defendant Greenhouse, and the District Attorney's

29

office, to allege falsely that Plaintiff improperly touched them. (Id. ¶ 108.)  Plaintiff alleges that, during those time periods, each of those Defendants were employed by Defendants Greenhouse, CAC, or CCSD, and took their actions in the course of their employment with those agencies. (Id. ¶ 108.)

Plaintiff further asserts that Defendants CCSD and Catoosa County, by and through members of Defendant CCSD and the District Attorney's office, intimidated and manipulated A.H., R.L., and E.M. with leading and suggestive questions during a grand jury proceeding, in an attempt to cause the children to make false allegations of abuse against Plaintiff and to obtain a criminal indictment against Plaintiff. (Am. Compl. ¶ 109.)

30

On April 1, 2009, Holly N. Kittle conducted a fourth interview of R.L. at Defendant CAC.  (Am. Compl. ¶ 110.) According to Plaintiff, during that interview, R.L. "completely contradicted her statements in previous interviews and made many serious and inculpatory statements of and concerning Plaintiff."  (Id. ¶ 111.)

During Plaintiff's trial, on April 14, 2010, R.L. testified that, after the June 4, 2008, interview was completed, and after being asked sixteen times if there was "anything else," she was walking down the hall with Defendant Thorne when she "just remembered" that Plaintiff "put all four of her fingers together and with her fingers and thumb, penetrated R.L.'s vagina."  (Am. Compl. ¶ 112.)  According to Plaintiff, Defendant Thorne testified that, after the interview, R.L.

31

AO 72A

wandered the halls of Defendant Greenhouse and located her in a conference room to tell her similar allegations that she had "just remembered."  (Id. ¶ 113.)  Plaintiff alleges that Defendant Thorne did not recall R.L. making those inculpatory statements to her in the hallway after the June 4, 2008, interview.  (Id. ¶ 114.)  Plaintiff alleges that the statement was not recorded on video or otherwise documented, that Defendant CCSD's case file contains no contemporaneous notes of the statement, and that no materials turned over to Plaintiff during discovery contained that statement.  (Id. ¶¶ 115-17.)

During Plaintiff's trial, on April 19, 2010, Defendant Sheri Wilson testified that, on or about May 24, 2008, she and R.L. had a discussion in Defendant Sheri Wilson's

32

driveway.  (Am. Compl. ¶ 118.)  Defendant Sheri Wilson stated that R.L. told her that Plaintiff "had touched her in her privates while she was in the bathtub and in the kitchen." (Id. ¶ 119.)  Defendant Sheri Wilson then demonstrated a "hand gesture with four fingers together [and] thumb moving up and down."  (Id. ¶ 120.)  Plaintiff contends that none of the discovery produced to her during the criminal proceeding documented that conversation, and that Defendant Deal testified that Defendant Sheri Wilson's testimony was the first that he had heard of such an allegation. (Id. ¶¶ 121-22.)  Plaintiff alleges that Defendant Sheri Wilson's testimony was false and was made in an effort to have Plaintiff convicted for a crime that she did not commit.  (Id. ¶ 123.)

33

Plaintiff also alleges that, on April 21 and 22, 2010, Defendant Deal testified that his file, in the past, was in the same condition and contained the same documentation as it did on those dates. (Am. Compl. ¶ 124.) Defendant Deal produced an investigative summary written by Detective Keith, which was allegedly dictated on July 8, 2008, and typed on July 27, 2008, but which was not produced to Plaintiff during criminal discovery, even though Plaintiff's counsel purportedly received the entire investigative file compiled by Defendant CCSD. (Id. ¶¶ 125, 127.) That investigative summary indicated that R.L. had made statements to Defendant Thorne concerning Plaintiff allegedly inserting her fingers into R.L.'s vagina. (Id. ¶ 126.)

Plaintiff alleges that several Defendants intentionally provided false testimony during her criminal trial, in an effort to obtain Plaintiff's conviction on offenses that Plaintiff had not committed.  (Am. Compl. ¶ 128.)  Specifically, Plaintiff asserts that Defendant Deal provided false testimony about the investigative summary, by indicating that the document remained in his file at all times.  (Id. ¶ 128(a).)  Plaintiff further asserts that Defendant Sheri Wilson provided false testimony concerning the alleged disclosure by R.L. and the demonstration by R.L. of the hand gesture.  (Id. ¶ 128(b).)  Plaintiff also alleges that Defendant Thorne provided false testimony concerning the alleged off-camera disclosure by R.L.  (Id. ¶ 128(c).)  According to Plaintiff, Defendant Joal Henke provided false testimony concerning an alleged

35

lesbian affair that Plaintiff had engaged in and an alleged incident in which Plaintiff insisted that they watch lesbian pornography, neither of which ever occurred. (Id. ¶ 128(d).) Plaintiff alleges that Defendant Sarah Henke provided false testimony indicating that she had never shaved her vaginal area in the shower in front of A.H., as well as false testimony indicating that A.H. had poor hygiene, which required Defendant Sarah Henke to bathe with A.H. to assist her. (Id. ¶ 128(e).) Plaintiff asserts that Defendant Lamb falsely testified that R.L. made allegations to her about improper touching by Plaintiff, even though R.L. never actually made those allegations. (Id. ¶ 128(g).) Plaintiff also alleges that Defendant Evans testified falsely about the

AO 72A

diagnosis of her own mental health impairment and about pleadings that she had filed in court.  (Id. ¶ 128(h).)

Plaintiff also alleges that the District Attorney's office allowed a live feed of all testimony to be broadcast in a room where many of their witnesses were waiting before testifying, in violation of the rule of sequestration.  (Am. Compl. ¶ 129.)  Plaintiff alleges that this live feed was designed to allow many of the prosecution's witnesses, including Defendants Lamb, Sheri Wilson, Thorne, Long, Joal Henke, Sarah Henke, and McDonald to listen to the testimony of other witnesses and to alter their own testimony to match that testimony.  (Id. ¶ 130.)

The jury found Plaintiff not guilty of each and every allegation.  (Am. Compl. ¶ 131.)  Plaintiff alleges that,

AO 72A

afterward, Defendant Lamb and Defendant Summers made statements to the press about Plaintiff and relating to the allegations of the criminal case. (Id. ¶ 132.)  In May 2010, Defendant Lamb gave a television interview in which she stated that the "jury got it wrong" and that the "justice system failed our children." (Id. ¶ 133.)  Plaintiff also contends that, during the same interview, Defendant Lamb indicated that Plaintiff was guilty of child molestation. (Id. ¶ 134.)  Plaintiff alleges that Defendant Lamb made those statements maliciously and with knowledge that the statements were false. (Id. ¶ 135.)

Plaintiff also contends that, in May 2010, Defendant Summers made at least two defamatory statements to the press. (Am. Compl. ¶ 136.)  According to Plaintiff, in those

38

statements, Defendant Summers indicated that the jury's verdict was incorrect and that Plaintiff was guilty of the charges made against her. (Id. ¶ 137.) Plaintiff also alleges that Defendant Summers compared her to O.J. Simpson in several instances, indicating that both Plaintiff and O.J. Simpson were guilty of the criminal charges made against them and had manipulated the media to assist them in obtaining acquittals. (Id. ¶ 138.) Plaintiff contends that Defendant Summers made those statements maliciously and with knowledge of their falsity. (Id. ¶ 139.)

In count one of her Amended Complaint, Plaintiff alleges that Defendants violated her constitutional rights because: (1) Defendants engaged in an unlawful seizure without probable cause; (2) Defendants violated her

AO 72A

procedural due process rights; (3) Defendants violated her substantive due process rights; and (4) Defendants' actions violated the equal protection clause.  (Am. Compl. ¶¶ 158-163.)   In count two of her Amended Complaint, Plaintiff alleges that Defendants Lamb, Sheri Wilson, DeWayne Wilson, McDonald, Sarah Henke, and Joal Henke, who are private individuals, conspired with Defendants Thorne, Long, Summers, Deal, and Evans, who are state actors, to violate Plaintiff's constitutional rights by influencing Plaintiff's familial and parental relationships and by subjecting Plaintiff to an illegal and unconstitutional process in her criminal case.  (Id. ¶¶ 164-172.)   Count three of Plaintiff's Amended Complaint contains a "Monell" liability claim against Defendants Catoosa County, CAC,

Greenhouse, and CCSD, based on alleged failure to train and supervise their employees, despite learning of previous incidents involving Defendants Thorne, Long, Deal, and Evans.  (Id. ¶¶ 173-86.)   In count nine of her Amended Complaint, Plaintiff asserts a malicious prosecution claim arising under federal law against all Defendants.  (Id. ¶¶ 238-48.)

Plaintiff's Amended Complaint also asserts a number of state law claims.  Those claims include: (1) an ordinary, or common law, negligence claim, as set forth in count four of Plaintiff's Amended Complaint, asserted against Defendants  Joal Henke, Sarah Henke, Catoosa County, Defendant CCSD, Defendant Greenhouse, Sheri Wilson, DeWayne Wilson, Thorne, Deal, McDonald, and Evans

41

(Am. Compl. ¶¶ 187-201); (2) a claim for gross negligence, contained in count five of Plaintiff's Amended Complaint, and asserted against each Defendant, (id. ¶¶ 202-206); (3) a claim for defamation per se, as set forth in count six of Plaintiff's Amended Complaint, and asserted against Defendants Lamb and Summers, (id. ¶¶ 207-219); (4) a claim for intentional infliction of emotional distress, as set forth in count seven of Plaintiff's Amended Complaint, and apparently asserted against all Defendants, (id. ¶¶ 220-27); (5) an invasion of privacy claim, contained in count eight of Plaintiff's Amended Complaint, and apparently asserted against all Defendants, (id. ¶¶ 228-37); (6) a claim for malicious prosecution or false arrest arising under state law,

42

as set forth in count ten of Plaintiff's Complaint, (id. ¶¶ 249-61).

## B.   Procedural Background

On May 24, 2010, Plaintiff filed this lawsuit.  (Docket Entry No. 1.)  On July 6, 2010, the Court entered an Order denying without prejudice various Motions to Dismiss and granting various Motions for More Definite Statement, and ordered Plaintiff to file an Amended Complaint within fourteen days that provided a more definite statement of Plaintiff's claims.  (Order of July 6, 2010.)

On July 21, 2010, Plaintiff filed her Amended Complaint.  (Docket Entry No. 72.)  On July 26, 2010, Defendants Greenhouse and Thorne filed a Motion for More Definite Statement.  (Docket Entry No. 77.)

43

On August 4, 2010, Defendants CAC and Evans filed a Motion to Dismiss. (Docket Entry No. 83.) On that same day, Defendants DeWayne and Sheri Wilson filed a Motion to Strike, or, in the Alternative, Motion to Dismiss. (Docket Entry No. 86.) Similarly, on that same day, Defendant Lamb filed a Motion to Strike, or, in the Alternative, Motion to Dismiss. (Docket Entry No. 87.)

On August 5, 2010, Defendants Joal and Sarah Henke filed a Second Motion to Dismiss. (Docket Entry Nos. 84-85.)[2]  On August 9, 2010, Defendants CCSD, Deal, Summers, and Catoosa County filed a Second Motion for

---

[2]Docket Entry Number 85 appears to be identical to Docket Entry Number 84. The Court directs counsel for Defendants Sarah and Joal Henke to refrain from filing duplicate Motions, as doing so serves only to clog the Court's docket and does nothing to advance this case.

44

More Definite Statement and a Second Motion to Dismiss for Insufficient Service of Process as to Defendant Deal. (Docket Entry No. 91.)

On August 18, 2010, Defendant Long filed a Motion to Dismiss.  (Docket Entry No. 94.)  On September 13, 2010, Defendant McDonald filed a Motion to Strike, or, in the Alternative, Motion to Dismiss.  (Docket Entry No. 114.)

Plaintiff has responded to all of the above Motions except for Defendant McDonald's Motion to Strike, or, in the Alternative, Motion to Dismiss.[3]  With the exception of the

---

[3]Because this Motion raises the same arguments as the other Motions to Strike, or, in the Alternative, Motions to Dismiss, to which Plaintiff already has responded, the Court concludes that no response from Plaintiff to this Motion is necessary.  The Court, however, directs counsel for Defendant McDonald to comply with the provisions of Local Rule 5.1C governing font type and size for all future filings.  The Court cautions counsel that the Court will direct the Clerk to strike any future filings that do not comply with

AO 72A

Motion to Dismiss filed by Defendant Long and Defendant McDonald's Motion, the briefing processes for the above Motions are complete. The Court concludes that no reply briefs are necessary for Defendant Long's Motion to Dismiss or for Defendant McDonald's Motion. The Court therefore finds that the Motions are ripe for resolution by the Court.

## II.   Motion to Dismiss as to Defendant Deal

Defendant Deal moved to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff failed to effect proper service of process on him. In response, Plaintiff stated that she had Defendant Deal personally served with process on August 16, 2010. A return of service filed on August 18,

---

those requirements, and will require counsel to re-file those documents in compliance with the Local Rules.

46

2010, also reflects that Defendant Deal was personally served with process on August 16, 2010. (Docket Entry No. 93.) In his reply, Defendant Deal acknowledges that his Motion to Dismiss based on insufficient service of process is now moot. (Reply Br. Supp. Mot. More Definite Statement & Renewed Mot. Dismiss of Defs. Deal, Catoosa County, CCSD, and Summers at 1.) The Court therefore denies as moot Defendant Deal's request to dismiss Plaintiff's claims against him based on allegedly insufficient service of process.

## III. Motions to Strike

Defendants Lamb, Sheri Wilson, DeWayne Wilson, and McDonald have moved to strike Plaintiff's Amended Complaint. All of those Defendants raise the same

47

arguments in support of their request to strike Plaintiff's Amended Complaint, contending that: (1) Plaintiff failed to file the Amended Complaint within fourteen days after the Court entered its July 14, 2010, Order; and (2) Plaintiff failed to comply with the Court's directions for amending her Complaint.[4]  The Court addresses those arguments in turn.

First, Defendants Lamb, Sheri Wilson, DeWayne Wilson, and McDonald argue that the Court should strike Plaintiff's Amended Complaint because Plaintiff filed that

---

[4]In the Motion to Dismiss filed by Defendants CAC and Evans, Defendant Evans requests that the Court strike statements contained in paragraphs 94 and 128(b) relating to her alleged mental illness.  Defendant Evans argues that those statements are not tied to any of Plaintiff's claims.  Because the Court concludes infra Part IV. that requiring Plaintiff to provide a more definite statement of her claims is appropriate, the Court denies without prejudice Defendant Evans' request to strike paragraphs 94 and 128(b).

AO 72A

document on July 21, 2010, rather than on July 20, 2010, when it was due.  In response, Plaintiff points out that she filed the document shortly after midnight on July 21, 2010, due to computer problems.  Given those circumstances, and given the Court's strong preference for resolving cases on their merits, rather than on technicalities, the Court declines to strike the Amended Complaint based on this argument.

Second, Defendants Lamb, Sheri Wilson, DeWayne Wilson, and McDonald argue that Plaintiff failed to comply with the instructions provided in the July 6, 2010, Order when filing her Amended Complaint, and that the Court consequently should strike that document.  For the reasons discussed infra Part IV., the Court finds that it is appropriate

49

AO 72A

to require Plaintiff to file a Second Amended Complaint that provides a more definite statement of her claims.   The Court, however, cannot find that Plaintiff willfully or intentionally disregarded the July 6, 2010, Order in connection with her Amended Complaint.   Under those circumstances, the Court will not strike Plaintiff's Amended Complaint based on its alleged failure to comply with the July 6, 2010, Order.

For the reasons discussed above, the Court declines to strike Plaintiff's Amended Complaint.   The Court therefore denies the Motions to Strike filed by Defendants Lamb, Sheri Wilson, DeWayne Wilson, and McDonald.

50

AO 72A

## III.   Motions for More Definite Statement

Defendants Deal, Catoosa County, CCSD, and Summers, along with Defendants Greenhouse and Thorne, have filed Motions for More Definite Statement.   Those Defendants argue that: (1) Plaintiff has provided few factual allegations in each of the counts of her Amended Complaint; (2) Plaintiff's Amended Complaint contains a number of conclusory statements and legal conclusions; (3) each count of the Amended Complaint incorporates all of the prior allegations by reference; (4) Plaintiff failed to specify which claims are asserted against each Defendant; (5) Plaintiff has failed to connect her claims to supporting facts; and (6) the Amended Complaint still contains unnecessary legal argument.

51

Federal Rule of Civil Procedure 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e). The United States Court of Appeals for the Eleventh Circuit has observed that a motion for more definite statement is appropriate where defendants are faced with a shotgun complaint. Bailey v. Janssen Pharm., Inc., 288 F. App'x 597, 608 (11th Cir. 2008) (per curiam). A complaint is a shotgun complaint where "it is virtually impossible to know which allegations of fact are intended to

AO 72A

support which claim(s) for relief." <u>Anderson v. District Bd.</u> <u>of Trustees of Cent. Fla. Comm. College</u>, 77 F.3d 364, 366 (11th Cir. 1996).  A complaint also is a shotgun pleading where it "lumps multiple claims together in one count and, moreover, appears to support a specific, discrete claim with allegations that are immaterial to that claim." <u>Ledford v.</u> <u>Peeples</u>, 605 F.3d 871, 892 (11th Cir. 2010).  "When faced with a complaint . . . in which the counts incorporate by reference all previous allegations and counts, the district court must cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to the claim." <u>Id.</u> "This task can be avoided if the defendant moves the court for a more definite

statement or if the court, acting on its own initiative, orders

a repleader." Id.

The Eleventh Circuit also has observed that, in the

case of a shotgun complaint,

> Unless the court requires a repleader - under Rule
> 12(e) or on its own initiative - a shotgun complaint
> leads to a shotgun answer. Where, as here, each
> count incorporates every antecedent allegation by
> reference, the defendant's affirmative defenses
> are not likely to respond to a particular cause of
> action but, instead, to the complaint as a whole.
> Such disjointed pleadings make it difficult, if not
> impossible, to set the bounds for discovery.
> Hence, discovery disputes are inevitable.
> Resolving them can be time consuming. If the
> court does not intervene and require the parties to
> narrow the issues, the discovery disputes continue
> unabated - until a motion for summary judgment or
> a pretrial conference brings them to a halt. At that
> point, the court is confronted with the time-
> consuming tasks it avoided earlier - rearranging
> the pleadings and discerning whether the plaintiff
> has stated a claim, or claims for relief, and
> whether the defendant's affirmative defenses are

> legally sufficient.  If the court performs these tasks, it will have to strike all of the allegations of the complaint and answer that are insufficient, immaterial, or impertinent - so that, when the tasks are finished, the complaint consists of a "short and plain statement of the claim," or claims, for relief, and the answer states "in short and plain terms the [defendant]'s defenses to each claim asserted."

Byrne v. Nezhat, 261 F.3d 1075, 1129-30 (11th Cir. 2001) (footnotes and citation omitted).   Applying the above guidance, the Court finds that it is once again appropriate to require Plaintiff to provide a more definite statement of her claims.   In reaching this conclusion, the Court acknowledges that the Amended Complaint, in at least some respects, comes closer than the original Complaint did to satisfying the well-pleaded complaint rule.   The Amended Complaint, however, remains deficient in several respects.

AO 72A

First, although Plaintiff's Amended Complaint names fifteen Defendants, the counts of the Amended Complaint still contain very few specific factual allegations that describe what each Defendant allegedly did, and, with only a few exceptions, fails to specify which Defendant allegedly is liable under each of the counts.  Second, each count of the Amended Complaint still incorporates by reference all of the preceding allegations, thus necessarily including facts that are not relevant to certain claims.  Third, Plaintiff's Amended Complaint, for the most part, fails to identify which allegations support each claim for relief, and fails to tie the factual allegations contained in the introductory portion of the Amended Complaint to specific counts or claims.

AO 72A

Fourth, the Amended Complaint still contains improper and unnecessary legal argument.

Fifth, as several Defendants have pointed out, the Amended Complaint is rife with legal conclusions and conclusory statements, particularly within the counts themselves.  For several of the counts, Plaintiff essentially provides only bare statements of the elements of the claims asserted in those counts, without providing any factual allegations to support those claims.  After Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), however, simply providing conclusory allegations of the elements of a claim is not enough to survive a motion to dismiss.

Given the above circumstances, the Court finds that the Amended Complaint still is a shotgun complaint and still is

57

deficient.[5]  The Court technically could dismiss Plaintiff's

Amended Complaint for failure to state a claim at this point;

however, it is still quite possible that Plaintiff may be able to

plead her claims properly by filing a Second Amended

Complaint that provides a more definite statement of those

claims.  Under those circumstances, the Court exercises its

discretion to require Plaintiff to provide a more definite

statement of her claims, instead of dismissing Plaintiff's

Amended Complaint outright.

For the above reasons, the Court directs Plaintiff to file

a Second Amended Complaint that provides a more definite

statement of her claims, and to do so within fourteen days

---

[5]The Court also observes that, given this conclusion, some of
the arguments contained in the various Motions to Dismiss are
well-taken.

58

AO 72A

of the date of this Order.   Plaintiff's Second Amended Complaint must include simple, concise, and direct factual allegations, separately set forth in sequentially-numbered paragraphs.   Plaintiff's Second Amended Complaint also must specifically set forth the facts and circumstances that support each claim as to each Defendant, and must not include legal arguments, conclusory statements, or repetitive allegations.   Plaintiff's Second Amended Complaint also must specify which factual allegations relate to which of her claims, and which claims relate to each Defendant.  The Court specifically observes that, to survive dismissal, Plaintiff's Second Amended Complaint must not simply contain conclusory allegations, legal conclusions, or

simple recitations of the elements of Plaintiff's various claims.

The Court also cautions Plaintiff and her counsel that the Court expects Plaintiff and her counsel to comply with this Order.  The Court will grant no other opportunities to replead the Second Amended Complaint, and will address future requests to dismiss the Second Amended Complaint on their merits, which may well result in dismissal of some or all of Plaintiff's claims.

## V.   Other Motions to Dismiss

Various Defendants, including Defendants CAC and Evans, (Docket Entry No. 83), Defendants Sarah and Joal Henke, (Docket Entry Nos. 84-85), Defendants DeWayne and Sheri Wilson, (Docket Entry No. 86), Defendant Lamb,

(Docket Entry No. 87), Defendant Long, (Docket Entry No. 94), and Defendant McDonald, (Docket Entry No. 114), also have filed Motions to Dismiss, arguing that Plaintiff's Amended Complaint fails to set forth viable claims for relief against those Defendants.   For the reasons discussed supra Part IV., the Court concludes that requiring Plaintiff to file a Second Amended Complaint that provides more detailed allegations concerning her claims and each Defendant's role in this case is appropriate.    The forthcoming Second Amended Complaint may well moot many of the concerns raised in the various pending Motions to Dismiss.  Moreover, as discussed supra Part IV., even if the Court concluded that certain portions of Plaintiff's Amended Complaint are deficient as to certain Defendants,

61

the Court would dismiss those claims without prejudice and would allow Plaintiff to file a Second Amended Complaint that attempted to remedy those deficiencies.  Under those circumstances, the Court finds that it would be premature to consider the Motions to Dismiss at this time.  The Court therefore will deny the various Motions to Dismiss without prejudice to Defendants' filing additional Motions to Dismiss after Plaintiff files her Second Amended Complaint.

## VI.  Conclusion

ACCORDINGLY, the Court **GRANTS** the Motion for More Definite Statement filed by Defendant Greenhouse Children's Advocacy Center and Defendant Thorne [77], **DENIES WITHOUT PREJUDICE** the Motion to Dismiss filed by Defendant Children's Advocacy Center of the Lookout

62

Mountain Judicial Circuit, Inc., and Defendant Evans [83],

**DENIES WITHOUT PREJUDICE** the Motions to Dismiss

filed by Defendant Sarah Henke and Defendant Joal Henke

[84] [85], **DENIES WITHOUT PREJUDICE** the Motion to

Dismiss filed by Defendant DeWayne Wilson and Defendant

Sheri Wilson [86-1], **DENIES** the Motion to Strike filed by

Defendant DeWayne Wilson and Defendant Sheri Wilson

[86-2], **DENIES WITHOUT PREJUDICE** the Motion to

Dismiss [87-1] filed by Defendant Lamb, **DENIES** the

Motion to Strike filed by Defendant Lamb [87-2], **GRANTS**

the Second Motion for More Definite Statement filed by

Defendants Catoosa County, Georgia, Deal, Summers, and

the Catoosa County Sheriff's Department [91-1], **DENIES**

**AS MOOT** the Second Motion to Dismiss for Insufficient

AO 72A

Service of Process filed by Defendants Catoosa County, Georgia, Deal, Summers, and the Catoosa County Sheriff's Department, which relates to Defendant Deal [91-2], **DENIES WITHOUT PREJUDICE** the Motion to Dismiss filed by Defendant Long [94], **DENIES** the Motion to Strike Amended Complaint filed by Defendant McDonald [114-1], and **DENIES WITHOUT PREJUDICE** the Motion to Dismiss Amended Complaint filed by Defendant McDonald [114-2].

The Court **ORDERS** Plaintiff to file a Second Amended Complaint **WITHIN FOURTEEN (14) DAYS OF THIS ORDER** that provides a more definite statement of Plaintiff's claims, as specifically directed in Part IV. of this Order. The Court **DIRECTS** the Clerk to **RE-SUBMIT** this case to the Court after the conclusion of the fourteen-day period if

64

AO 72A

Plaintiff fails to file her Second Amended Complaint as directed in this Order.

IT IS SO ORDERED, this the 15 day of September, 2010.

_____
UNITED STATES DISTRICT JUDGE

65

AO 72A